STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

**AFFIDAVIT**

I, Bernard E. Boudreaux, Jr., being duly sworn, state that since the rendition of my written opinion dated December 13, 2005, in the matter of Albert Ronnie Burrell and Michael Ray Graham, Jr. versus Tommy Adkins, et al, case number 301-CV-2679, in the United States District Court, Western District of Louisiana, Monroe Division, a copy of which opinion is attached to this affidavit as Exhibit A, I have read the depositions of Donald Holdman and Monty Forbes, both taken under oath before Lisa Dowdy, Certified Shorthand Reporter on May 24, 2006, and May 25, 2006, respectively, the deposition of Dan Grady, III taken under oath before Karen Kelley, Certified Shorthand Reporter, on June 19, 2006, and the deposition of Tommy J. Adkins, taken under oath before Tina D. Miller, Certified Court Reporter on June 22, 2006, and that after reading the aforementioned depositions I hereby state that my opinion attached hereto as Exhibit A remains the same and contains my true opinions as to the matters therein expressed, and that I make no changes to the opinions therein expressed.

_____
Bernard E. Boudreaux, Jr.

Sworn to and subscribed before me this 7th day of November, 2006, at Baton Rouge, Louisiana.

_____
Notary Public
Print Name: LANCE J. KINCHEN
Notary/Bar Roll #: 21668

**EXHIBIT**

0

722139.1



**BREAZEALE, SACHSE & WILSON, L.L.P.**   ATTORNEYS AT LAW

BERNARD E. BOUDREAUX, JR.
*bob@bswllp.com*

DIRECT DIAL (225) 381-8017
PHONE (225) 387-4000
FAX (225) 387-5307
One American Place, Suite 2300
Post Office Box 3197
Baton Rouge, LA 70821-3197

**www.bswllp.com**

December 13, 2005

Mr. Ralph R. Alexis, III
Porteous, Hainkel and Johnson, L.L.P.
704 Carondelet Street
New Orleans, LA 70130-3774

     Re:   Burrell v. Adkins

Dear Mr. Alexis:

    You have requested my opinion as to the propriety of the exercise of prosecutorial discretion by former District Attorney Tommy Adkins (Adkins), Third Judicial District of Louisiana, Parishes of Lincoln and Union, in the prosecution of Albert Ronnie Burrell (Burrell) and Michael Ray Graham, Jr. (Graham) for the murders of William Delton Frost and Maude Frost, husband and wife (Victims). This opinion is based upon an assumption of the following facts and circumstances:

1)    The Victims were murdered on August 31, 1986, in Union Parish, Louisiana, by having been shot in the head with a .22 caliber firearm.

2)    Adkins was aware of the commission of the murders almost immediately after the fact.

3)    Kenneth L. Averitt, Sheriff of Union Parish (Sheriff), as chief law enforcement officer in the parish where the two murders were committed, was in charge of the investigation of the murders, and his office did conduct the investigation of the murders.

4)    Adkins assigned to Dan Grady ("Grady") Assistant District Attorney, Third Judicial

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 2

District of Louisiana, the duty of monitoring the investigation of the murders, and the duty of prosecuting the cases against Burrell and Graham.

5) As a result of the investigation conducted by the Sheriff, an affidavit was prepared by Grady in order to obtain a warrant for the arrest of Burrell and Graham. A copy of the affidavit, which copy is unsigned and is dated only as to the month of October, 1986, is attached to this opinion as Exhibit A.

6) A warrant for the arrest of Burrell was issued on October 12, 1986.

7) The arrest of Graham was apparently unnecessary because he was reportedly in jail on other charges at the time the warrant for the arrest of Burrell was issued.

8) The evidence against Burrell and Graham was presented to a grand jury in Union Parish, Louisiana, on October 24, 1986, and the grand jury returned a true bill indicting Burrell and Graham for the crime of first degree murder of the Victims.

9) As a result of the aforesaid indictment and based on the evidence obtained from the investigation of the murders of the Victims, Burrell and Graham were brought to trial, convicted of the crime of first degree murder, and were sentenced to death.

This opinion is also based on a review of:

1) a copy of the transcript of a portion of the proceedings of the grand jury convened to investigate the murder of the Victims,

2) a copy of the deposition of Adkins taken on March 18, 2005,

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 3

    3)    the pleadings filed in the civil suit in connection with which this opinion has been sought,

    4)    a copy of an unsigned affidavit by Grady referred to in this opinion,

    5)    a copy of the indictment of Burrell and Graham,

    6)    provisions of the Louisiana Constitution of 1974, together with provisions of the Louisiana Code of Criminal Procedure, the Louisiana Code of Evidence, and the Revised Statutes of Louisiana, to the extent that such laws are applicable to this matter.

    After the arrest of Burrell and Graham, it was the duty of Adkins, utilizing the staff of his office (collectively, Adkins) to review the evidence available to him in the case in order to properly exercise his prosecutorial discretion as to whether to begin the prosecution process against Burrell and Graham. Adkins assigned the duty of presenting the matter to a grand jury and the duty of prosecuting the case at trial to Grady, who had considerable previous experience as an assistant district attorney in three other judicial districts such that he had sufficient experience as a public prosecutor to properly perform the duties assigned, and in fact possessed credentials superior to those reasonably required by the position which he held.

    Since the defendants Burrell and Graham had been arrested for the murders of the victims and were in jail beginning at the latest October 12, 1986, it was therefore incumbent upon Adkins to make a timely decision as to whether to present the matter to a grand jury.

    The first effort in a determination as to whether Adkins properly exercised prosecutorial discretion in the Burrell-Graham prosecutions is to review the facts and circumstances surrounding his decision to present the matter for consideration by a grand jury. In order to opine as to the

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 4

propriety of his decision to present the matter to a grand jury, it is necessary to determine what information was available to Adkins at the time that he made the decision to proceed to a grand jury with the matter. Secondly, it is necessary to consider the constitutional and statutory procedures pursuant to which a grand jury proceeding must take place. Thirdly, it is necessary to consider the customary purposes for which grand juries may be generally employed. Fourthly, it is necessary to consider the generally accepted standard normally utilized as to the exercise of prosecutorial discretion in arriving at a decision to present a matter to a grand jury.

As stated above, the first consideration necessary is to determine what information was available to Adkins at the time he made the decision to present the matter to the grand jury.

It is clear that Adkins had available all of the information set forth in the affidavit of October, 1986 prepared by Grady (Exhibit A). Adkins also had available to him at least some, but not necessarily all, of the information presented to the grand jury.

It was the duty of the Sheriff, as the chief law enforcement officer of Union Parish, to conduct the investigation of the two murders, (La. Const. Article V, Section 27; La. R.S. 33:1435), and to make available to Adkins all of the information gathered as a result of that investigation. (State v. Didier, 254 So. 2d 262, La. 1971). It is reasonable to assume that officers employed by the Sheriff appeared before the grand jury and provided evidence which they had gathered about the crime under investigation to the grand jury, evidence in the nature of basic and general information, such as the time and place at which the bodies of the Victims were found, the names of persons interviewed in connection with the investigation, and the information derived from the interviews. It is also reasonable to assume, unless there is evidence to indicate otherwise, that the said officers communicated to Adkins, or to his staff, prior to their appearance before the grand jury some or perhaps all of the information which the said officers provided to the grand jury. Adkins had a right to expect that the Sheriff would properly perform his constitutional, statutory and jurisprudential duty to investigate the murders of the Victims, and would faithfully make available to him all of the

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 5

results of that investigation, all as required by law. Conversely, Adkins had no reason not to rely on the reports of the investigation of the two murders which was being conducted by the Sheriff.

The second consideration as to the propriety of the exercise of prosecutorial discretion in deciding to present the case to the grand jury is a consideration of the constitutional and statutory procedures pursuant to which a grand jury must perform its duties.

The Louisiana Code of Criminal Procedure, Article 431, et seq., provide as to grand jury proceeding as follows:

1)   The proceedings of a grand jury shall be kept secret, specifically including the testimony of witnesses. (CCrP Art. 434)

2)   The grand jury shall meet as directed by the court or may meet on its own initiative. (CCrP Art. 435)

3)   The grand jury shall inquire into all capital offenses triable within the parish and shall inquire into offenses when requested to do so by the district attorney. (CCrP Art. 437)

4)   The grand jury may investigate any offense on its own initiative. (CCrP Art. 438)

5)   The grand jury may subpoena on its own a witness to appear before it to respond to questions by a grand juror or the district attorney. (CCrP Art. 439, 442A)

6)   Witnesses who testify before the grand jury shall do so under oath. (CCrP. Art. 440)

7)   The grand jury shall find an indictment, charging the defendant with the commission

024284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 6

of an offense, when, in its judgment, the evidence considered by it, if unexplained and uncontradicted, warrants a conviction. (CCrP Art. 442)

8)   The grand jury is an accusatory body and has the power to return a true bill, return a no true bill, or by predetermining the matter investigated. (CCrP Art. 444)

The third consideration as to the propriety of the exercise of prosecutorial discretion in deciding whether to present the case to a grand jury is a consideration of the customary purposes for which a grand jury may be generally employed.

Aside from the fact that the Louisiana Code of Criminal Procedure, Article 437, requires the grand jury to inquire into all capital cases, there are several practical reasons why a district attorney may elect to present a matter to a grand jury for its consideration and action.

1)   A grand jury is both an investigative body (CCrP Art. 437 and 438) and an accusatory body (CCrP Art. 443 and 444), and therefore a grand jury affords a district attorney the opportunity to investigate an allegation of criminal activity.

2)   A grand jury witness is required by law to testify under oath, and that testimony may be recorded and preserved for possible use later in criminal proceedings. It is specifically available in order to show that a witness has committed perjury in his testimony before the grand jury (CCrP Art. 434A).

3)   A grand jury witness is subject to cross examination by the district attorney and members of the grand jury as to any matter about which there is interest without regard to strict rules of evidence, such as foundation for impeachment evidence.

4)   The credibility and demeanor of a potential witness at a trial of the matter under

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 7

consideration may be viewed and evaluated when the witness testifies before a grand jury, especially when the witness is cross examined by the district attorney or by grand jurors.

5) Evidence elicited by a grand jury may suggest, or lead to, other sources of information not previously discovered by the police, which may lead to relevant and material evidence concerning the matter under consideration, thereby fulfilling the investigative purpose of a grand jury (CCrP 437 and 438).

6) The identity and testimony of a frightened or reluctant witness is protected by the secrecy of a grand jury investigation.  (La. Const. Article V, Section 34A; CCrP Article 434)

7) The secrecy of a grand jury protects those under suspicion, but who are innocent of wrong doing, from public ridicule which may result from public knowledge of the fact that they are the subject of or involved in a criminal investigation.

8) In the event of an indictment, a defendant is not entitled to a preliminary hearing, which prevents public knowledge of the evidence since grand jury proceedings are secret, thereby enhancing the ability of obtaining a fair and impartial jury in the venue in which the crime has been committed.  (La. Const. Article 1, Section 14)

9) In a capital case, or in a case where punishment by imprisonment for life is available, prosecution can only proceed as a result of an indictment by a grand jury (La. Const. Article I, Section 15, CCrP, Art. 382A; 859(8)).

10) A potential defendant may elect to testify before a grand jury and waive the privilege against self-incrimination subject to all of the conditions set forth above.

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 8

The fourth consideration as to the propriety of the exercise of prosecutorial discretion in deciding to present a case to a grand jury is a comparative analysis of the generally accepted standard normally utilized as to the exercise of such discretion and that specific discretion exercised by Adkins in the instant matter after considering the totality of the circumstances, including a consideration of the information available to Adkins at the time he exercised his prosecutorial discretion to take the matter to a grand jury, the constitutional and statutory procedures pursuant to which a grand jury must operate, and the customary purposes for which grand juries may be generally employed.

Article 443 of the Louisiana Code of Criminal Procedure provides that a grand jury shall find an indictment, charging a defendant with the commission of an offense, when, in its judgment, the evidence considered by it, if unexplained and uncontradicted, warrants a conviction.

Standards as to the proper exercise of prosecutorial discretion have been established by the National District Attorneys Association and by the Louisiana District Attorneys Association. The National District Attorneys Association has published a handbook for prosecutors entitled, National Prosecution Standards, (1991, second edition, based on the first edition of 1977). The first principle enunciated therein is that the "primary responsibility of the prosecution is to see that justice is accomplished." This concept is simple enough. However, after its enunciation, the work expounds on the myriad issues which must be factored into the process of arriving at the desired utopian result. Almost immediately, after the pronouncement of the aforesaid "primary responsibility," is the assertion that:

"The prosecutor should at all times be zealous in the need to protect the rights of individuals, but must place the rights of society in a paramount position in exercising prosecutorial discretion in individual cases and in the approach to the larger issues of improving the law and making the law conform to the needs of society." (Page 9, supra, emphasis added.)

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 9

The commentary continues: "Application of the prosecutor's determination to any specific situation involves a complex charging decision.... The charging decision is not an exact science...." (Page 131, supra, emphasis added.)

The discussion of the exercise of prosecutorial discretion, in essence, includes postulates such as:

1) "The prosecutor should file only those charges which he reasonably believes can be substantiated by admissible evidence at trial." (Page 130, supra.)

2) "In reaching the charging decision, active within the parameters of then-available information, the prosecution should seek to make a charging decision ...." (Page 131, supra, emphasis added.)

3) "The prosecutor should ... file only those charges which he considers to be consistent with the interests of justice." (Page 130, supra.)

4) "The prosecutor should file only those charges which he reasonably believes can be substantiated by admissible evidence." (Page 130, supra.)

In essence, the standard espoused by the National District Attorney's Association is based on the concept that a prosecutor should proceed with only those charges which he reasonably believes are supported by probable cause, that is, the probability of conviction.

The Louisiana District Attorneys Association has historically espoused the concept that charges should be brought based on probable cause that the person charged can be convicted through the use of evidence admissible at trial, as does the Rules of Professional Responsibility, Article 16, Rule 3.8, which provides: "The prosecutor in a criminal case shall (a) Refrain from prosecuting a charge that is not supported by probable cause."

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 10

Employing the standard set forth above, it was therefore appropriate for Adkins to take into consideration all of the information available to him at the time that he made the decision to present the matter to a grand jury. That information is set forth beginning on page 1 above. In summary, the information available to Adkins at the time that he decided to present the matter to a grand jury was as follows:

1)    The Victims had been murdered by use of a .22 caliber firearm.

2)    Money had apparently been taken from the Victims.

3)    The former wife of Burrell, Janet Burrell, had reported to the Sheriff that Burrell had confessed to her that he had killed the Victims.

4)    Janet Burrell had furnished corroborating information to support her report of the confession to the effect that:

    a)    The confession was given on the night the murders were committed.

    b)    At the time of the confession, she had seen a .22 caliber rifle in the possession of Burrell.

    c)    She had also at the same time seen a wallet containing the driver's license and social security card of William D. Frost, one of the Victims, in the possession of Burrell.

    d)    She had seen blood on Burrell's person when he made the confession.

5)    Witnesses who appeared to be independent and impartial had seen Burrell and Graham together on the night and at approximately the time of the murders.

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 11

6)    The same witnesses had seen the usually impecunious Graham and Burrell counting
      what was for them a large sum of money shortly after the commission of the murders.

7)    The same witnesses had seen blood on the persons of Graham and Burrell shortly
      after the commission of the murders.

8)    Graham testified before the grand jury that: (a) he was with Burrell at approximately
      the time of the murders; (b) he may have had blood on his person, and (c) Burrell had
      available a .22 caliber rifle.

Adkins had received no contradictions of the foregoing evidence prior to a grand jury
investigation, and there was no apparent reasonable explanation of said evidence.

Considering the constitutional and statutory procedural aspects of grand jury practice cited
above, including the investigative function of a grand jury, Adkins should have known and
considered that there was a possibility that an explanation of the evidence or a contradiction thereof
(CCrP, Art. 443) might be forthcoming in a hearing before a grand jury, because his assistant, Grady,
had expressed some modicum of doubt as to the credibility of one, some or perhaps even all of the
witnesses who were available to testify in the matter. (Exhibit B). However, the law applicable to
grand jury proceedings anticipates the possibility of lack of credibility as to grand jury evidence and
testimony. As pointed out, the grand jury may cross examine, under oath, the witnesses appearing
before it in order to ascertain the truth as to the testimony proffered (CCrP Art. 439, 440, 442). It
may also subpoena other witnesses deemed necessary as the case unfolds before it. (CCrP Art. 439,
442). While a grand jury is both an investigative and accusatory body, it also has the unfettered
prerogative to return a no true bill in the matter, should it lack sufficient confidence in the credibility
of the witnesses or the reliability of the evidence available to it. (CCrP Art. 444).

Taking into consideration the evidence about which Adkins had knowledge at the time he

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 12

had to decide whether to take the matter to a grand jury, the law applicable to the conduct of a grand jury, and the question harbored by Grady (Exhibit B) as to the credibility of a witness or witnesses available, Adkins should next have considered the utility of a grand jury in such circumstances, as is illustrated on page 5, et seq. above. By way of reiteration, a grand jury affords an opportunity to test credibility thought to be lacking in witnesses, the testimony could be compelled, under oath, recorded and transcribed for use in the future, and a defendant may elect to testify before a grand jury, waive his privilege against self-incrimination and subject himself to cross examination, under oath, with the resulting testimony recorded and transcribed. Indeed, Graham did so testify before the grand jury, and fairly admitted: (a) that he had been with Burrell on the night of the murders, (b) that coincidently, he may well have had blood on his person shortly thereafter, as reported by witnesses. (Grand jury proceedings, Page 8, lines 8 through 28.); and (c) that Burrell had available a .22 caliber rifle. Finally, Adkins, as a District Attorney, knew that the law provided that the grand jury "... shall inquire into all capital offenses ..." (La.CCrP Art. 437).

Considering the totality of the circumstances as they existed on October 24, 1986, the date on which Adkins took the matter to a grand jury, I am of the opinion that Adkins' exercise of prosecutorial discretion to proceed to take the matter to a grand jury was entirely reasonable and proper, and, in fact, it would have been improper for him to have failed to do so. The consequence of his so doing was that the grand jury returned a true bill in the matter and indicted Burrell and Graham for the first degree murder of the victims, as provided by law.

Having opined that Adkins' exercise of prosecutorial discretion in deciding to present the matter to a grand jury was proper, consideration must now be given as to the propriety of Adkins' exercise of prosecutorial discretion in deciding to proceed to trial on the indictment. A district attorney has broad discretion not only as to whether to initiate criminal charges against a defendant and to seek indictment, but also as to whether to continue the prosecution after indictment through trial to verdict. (La. Const. Art. V, Sec. 26; CCrP Art. 61, 691). After indictment, a district attorney may, within his prosecutorial discretion, dismiss the indictment. Therefore, after indictment and before trial, Adkins could have decided, within his prosecutorial discretion, to dismiss the indictment

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 13

for first degree murder against Burrell and Graham, or either of them. He did not do so, and instead, he exercised his prosecutorial discretion in favor of proceeding to trial of both Burrell and Graham on the indictment for first degree murder. The trials were severed, and the trial of Graham was held separately from the trial of Burrell. Each of the trials resulted in a conviction of the crime of first degree murder, and each of the defendants was sentenced to death. It must be parenthetically noted that after conviction, a district attorney may dismiss an indictment only when a new trial has been granted, or when a motion in arrest of judgment has been sustained. (CCrP Art. 692)

As was the case in forming an opinion as to the propriety of the exercise of prosecutorial discretion in deciding to present the instant case to a grand jury, in order to form an opinion as to the propriety of the exercise of prosecutorial discretion in deciding to proceed with the instant case to trial, through sentence, it is necessary to consider all of the evidence available to Adkins before and during the trial of each of the defendants, the constitutional and statutory procedures pursuant to which a trial must take place, and there must also be made a comparative analysis of the generally accepted standard normally utilized as to the exercise of the prosecutorial discretion in deciding whether a grand jury indictment should proceed to trial and that specific prosecutorial discretion exercised by Adkins in reaching the decision to proceed to trial of Burrell and Graham on the grand jury indictment of them for the crime of first degree murder.

As to the evidence available to Adkins in order to exercise such prosecutorial discretion, Adkins continued to have available to him all of the evidence which he had available before the convening of the grand jury. He at least had that portion of the information presented to the grand jury as is set forth in the transcript of those proceedings. It appears from the said transcript that only a portion of the grand jury proceedings were recorded and transcribed, because on page 2, line 23, et seq., of the transcript, in response to an inquiry by the court as to whether the proceedings would be recorded, Adkins stated that "... certain parts of it (the grand jury proceedings) that we will want to take down." (Emphasis added.) Further indication that only a portion of the grand jury

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 14

proceedings were recorded and transcribed is the fact that some recorded questions were posed by members of the grand jury which indicate that prior testimony not included in the transcript had been received by the grand jury. For example, the question on page 18, line 19 of the transcript: "Which one had a silencer on it?", has no predicate information as to a silencer in the transcribed portion of the grand jury proceedings. In addition, Olan Wayne Brantley, who had been in jail with both Burrell and Graham, reported that while in jail, he had heard both Burrell and Graham admit that they had killed the Victims. As to Burrell, Brantly was the second person who reported his confession. This additional evidence (the reports by Brantley) removed some of the doubt as to credibility of the witnesses previously harbored by Grady (See Exhibit B), although perhaps not all of the doubt.

It is appropriate to note that while the factual circumstances recited by the witnesses in the instant matter before, during and after the grand jury indictment may seem unusual and curious, thereby causing pause as to the reasonableness and credibility of the revelations, it is not altogether unusual that persons who are peripherally involved in the crime of murder as witnesses, or who are related to persons suspected of committing a crime, or who are related to such witnesses, are not always of the most sterling character, and further, the credibility of such persons may in fact be subject to serious attack. The fact that the credibility of a witness may be subject to serious attack is not always indicative of the fact that the testimony of that witness is, in fact, false in the case under investigation. Even the most flagrant liar may, in fact, be telling the truth about a matter for which he is called to testify under oath in a court of law.

Having expressed the caveat as to credibility of witnesses, the constitutional and statutory provisions of law pertaining to the conduct of trials of criminal cases take into consideration such circumstances as are mentioned above by making available extensive cross examination of any witness called to testify at trial as to the facts and circumstances for which the witness has been called. (La. Const. Art. I, Sec. 16; LCE 607). There are also special rules for examination of

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 15

witnesses whose reputation for truthfulness is questioned and attacked. (LCE 608, 609, 609.1). Therefore, the law, through the Louisiana Constitution of 1974, the Louisiana Code of Evidence, and the jurisprudence attendant thereto, contemplate trial of those cases where witnesses may ostensibly lack credibility. Some of the reasons for the statutory scheme designed to provide a process for questioning untruthful witnesses are that, as pointed out above, persons involved in crime, their associates, and occasionally witnesses to the crime, may be such that their credibility and reputation for truthfulness are not good. However, notwithstanding the foregoing, persons who are the victims of a crime involving such credibility lacking persons are nevertheless entitled to access to the criminal justice system, and such access to the system should not be denied solely because of the questionable credibility of witnesses. While a prosecutor has great discretion as to whether to initiate a criminal action (La. Const. Art. V, Section 26B, C.Cr.P. Article 61), and he should not do so absent probable cause, as defined, he also has a duty to prosecute those crimes where the exercise of prosecutorial discretion leans in favor of so doing. The philosophy as to the administration of criminal justice in the United States is that a criminal act is committed upon society as a whole and that society is the proper vindicator. The district attorney has a very large role in the administration of criminal justice, and the duty of the district attorney should be performed with due consideration of the interests of society and its welfare as is set forth in the National Prosecution Standards cited above. The question is, then, whether the Adkins' decision to proceed to trial on the indictment of Burrell and Graham for first degree murder was proper considering the totality of the circumstances under the generally accepted standard of propriety for the exercise of such discretion. It is in the specific arena of such comparative analysis that the competing interests are evaluated, and an opinion as to propriety in the exercise of prosecutorial discretion is formed.

The generally accepted standard of propriety as to the exercise of prosecutorial discretion in reaching a decision as to whether to proceed to trial after indictment includes basically the same principles and criteria as does the generally accepted standard of propriety as to the exercise of prosecutorial discretion in reaching a decision as to whether to present a case to a grand jury. That standard is based almost entirely in the concept of probable cause, that there is a probable cause that

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 16

a trial will result in a conviction of the accused. There is an important exception to the probable cause test, and that exception is that an indictment by a grand jury is afforded much weight in reaching a decision to proceed to trial. The National Prosecution Standards (supra) provides:

"Where charges are reviewed by a grand jury the requirement for a probable cause determination should be eliminated." (Page 172.)

The assertion quoted above must, of course, be tempered by the availability of the authority vested in district attorneys in Louisiana by Code of Criminal Procedure Article 691, which provides as follows:

"The district attorney has the power, in his discretion, to dismiss an indictment or a count in an indictment...."

However, that being said, while it is correct that a district attorney has broad discretion in the exercise of prosecutorial discretion, that discretion is not, and should not be, unfettered. It must be exercised within the generally accepted parameters described wherein many factors must be considered. It is entirely inappropriate for a district attorney to exercise prosecutorial discretion based solely on his own personal feelings as to the credibility of a witness, or witnesses, who are available for trial in a particular matter because the trial jury is, by law, the ultimate authority as to the weight to be given to the evidence, and also as to the credibility to be given to the witnesses. (CCrP Art. 802(3)). Accordingly, other considerations must be factored into the exercise of prosecutorial discretion, which considerations vary according to the facts and circumstances of each case. Some of the considerations which would have been appropriate for Adkins to consider in the Burrell and Graham case were:

1)    The case involved the commission of a heinous crime, the murder of two people.

2)    The victims were murdered in their own home, at night.

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 17

3) The murders involved armed robbery, and/or aggravated burglary and/or theft.

4) The witnesses gave various reports having to do with matters which connected the suspects to the murders, such as association, time, place, possession of property belonging to the Victims, opportunity and means with which to commit the crime, blood on their person shortly after the murders, and confessions, two by Burrell.

5) There was collective weight as to all of the evidence available at the time of the exercise of prosecutorial discretion.

6) The defendants had been indicted by a grand jury.

Due deference must be afforded to all such considerations, and the personal impression of the district attorney as to witness credibility should only be a part of the considerations and should be weighed together with all others. In essence, there is a balance of all considerations making up the totality of all of the circumstances surrounding each individual case in the exercise of prosecutorial discretion as to whether or not to bring a case to trial by jury. As stated in the National Prosecution Standards (supra, at page 131): "The charging decision is not an exact science."

It is, of course, reasonable to assume that Adkins, as district attorney for the Third Judicial District of Louisiana, had knowledge of the provisions of the Louisiana Constitution of 1974, the Louisiana Code of Criminal Procedure and its ancillaries, and the Louisiana Code of Evidence, to the extent that they are cited hereinabove, and including, as stated hereinafter, that the defendant is presumed innocent, (La. Const. Art. 1, Sec. 16) that the state/prosecution must prove the guilt of the accused beyond a reasonable doubt; (LSA-R.S. 15:271; CCrP Art. 804), that every doubt as to the evidence or the lack thereof, must be resolved in favor of the accused (CCrP 804), and, most

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 18

importantly, in a case such as the instant case, that the petit jury is the sole judge of the credibility of the witnesses who appear to testify before it under oath at the trial. (CCrP Art. 802(3))

Therefore, in forming an opinion as to the propriety of Adkins' exercise of prosecutorial discretion in proceeding to trial on the indictment of Burrell and Graham, the totality of the circumstances must be considered, including the following:

1)     A grand jury had considered the evidence presented to it concerning the instant case, had determined that such evidence was sufficient to indict Burrell and Graham for the first degree murder of the Victims, and had therefore returned an indictment for the crime of first degree murder against the said defendants.

2)     There was much inculpatory evidence and information available to Adkins at the time he exercised his prosecutorial discretion to proceed to trials on the said indictment, and through the trial, to verdict and sentence, which evidence is referred to in detail herein. (See page 16 above.)

3)     The law contemplates and provides procedures for trials which include witnesses of questionable character and credibility, and provides safeguards in order to ensure that truth may be ascertained in such trials.

4)     All of the provisions of law which provide that:

a)     A petit jury is the sole judge of the credibility of the witnesses, and as to the guilt or innocense of the accused.

b)     The accused in a criminal trial is presumed innocent until guilt is proven beyond a reasonable doubt.

624284

Mr. Ralph R. Alexis, III
December 13, 2005
Page 19

    c)    The accused must be given the benefit of every reasonable doubt arising out of the evidence, or the lack of evidence, in the case.

Considering the totality of the circumstances, and also considering the generally accepted standard of propriety for the exercise of prosecutorial discretion in deciding whether to prosecute a case through trial to verdict and sentence, as set forth by the National District Attorneys Association, the Louisiana District Attorneys Association and the Rules of Professional Responsibility, I am of the opinion that Adkins properly exercised his prosecutorial discretion in deciding to proceed to trial, through verdict and sentence, in the case of State versus Albert Ronnie Burrell and the case of State versus Michael Ray Graham, Jr.

Very truly yours,

BREAZEALE, SACHSE & WILSON, L.L.P.

Bernard E. Boudreaux, Jr.

BEBJr/mlw

624284



## AFFIDAVIT FOR PRESENTATION TO GRAND JURY

STATE OF LOUISIANA

PARISH OF UNION

BEFORE ME, the undersigned authority personally appeared DAN J. GRADY, III, Assistant District Attorney who, being first duly sworn, deposed and said that on or about Augsut 31, 1986, in Union Parish, Louisiana,

### ALBERT RONNIE BURELL and MICHAEL GRAHAM

committed the offense of FIRST DEGREE MURDER WITH A FIREARM in that they violated Louisiana Revised Statutes 14:30, 14:95.2, CCrP 893.1, RS 14:60, RS 14:33, 34, and 35, RS 14:64 and 65, RS 14:67, as same may have been amended, in that they did, with intent to commit a theft and other felonies therein, and while armed with dangerous weapons, to-wit: firearms, make an unauthorized entry into an inhabited dwelling, the residence of William D. Frost and Callie M. Frost, and did, while therein, commit a battery upon William D. Frost and ~~upon~~ Callie M. Frost, and did commit armed robbery and simple robbery of William D. Frost and Callie M. Frost, and did commit theft of money, in excess of $500.00, property of William D. Frost and Callie M. Frost, and did, during the perpetration of said offenses, and while armed with and using said firearm, commit First Degree Murder of William D. Frost and Callie M. Frost, contrary to the law of the State of Louisiana and against the peace and dignity of the same.

PROBABLE CAUSE FOR THE ISSUANCE OF A WARRANT HEREIN IS AS FOLLOWS:

Affiant is Assistant District Attorney in the Third Judicial District Court of Louisiana, and, as such, is privy to investigative reports rendered by, and has personally interviewed investigating officers of the Union Parish Sheriff's Office. According to these sources, the following has transpired:

On Saturday, September 1, 1986, the bodies of William D. and Callie M. Frost were found at their residence. Both had been shot in the head with a .22 caliber weapon fired from an outside window. The person(s) then broke the glass in the front door, entered the residence and was believed to have taken an undertermined amount of money. Evidence at the scene, eye witness testimony, and evidence given by the Forensic Pathologist Laboratory indicate that the murders occurred after 9:00 P. M. on August 31, 1986, but prior to the victims going to bed that night.

On October 12, 1986, Sheriff Larry Averitt was contacted by Janet Burell. She stated to Sheriff Averitt that she had information relating to the above crime. Sheriff Averitt and affiant interviewed Janet Burell at the Union Parish Sheriff's Office. She stated the following: Janet Burell met Albert Burell who is her ex-husband, on August 31, 1986, near Sibly, Louisiana, on a back road. She stated that at approximately 8:30 P. M. he told her that he was leaving, and told her to meet him back at 11:00 P. M. Ronnie Burell showed up at approximately 11:30 P. M. Janet Burell got into the car with Albert Burell and noticed a pile of clothes on the front seat of his car. When she moved the clothes, she noticed a two-fold billfold. She took the billfold, opened it, and saw William D. Frost's driver's license and social security card. Ronnie Burell became agiated when he saw her with it, and snatched it from her hand. Ronnie Burell then told her that he had gone to the Frosts' residence to borrow some money from him; however, Delton Frost would not let him have it. He stated that he went outside and killed them and took the money anyway. He had shown Janet Burell 27 $100.00 bills. He said that he then broke the front door and pushed his way in. He said then Delton Frost was lying on the floor in front of the door. (This was the position that Delton Frost was found in). He then took the money and left. He bragged about killing the Frosts, and then told her that he would kill her and her child if she told. She also noticed that he had blood on the boots that he was wearing. She described them as being faded brown cowboy boots. She also observed a .22 caliber rifle lying on the back seat of the car. She stayed with Albert Ronnie Burell about fifteen minutes and left. The next time she saw him was the following Wednesday. She asked him about the money and he told her that he had deposited it into a bank in his name.

According to a statement taken from Kenneth W. St. Clair, he, Burrell and Graham were together on the night of the murders, having gone to a truck stop on I-20 at Calhoun, Louisiana. They departed the truck stop somewhere around 8:00 P. M., in Burell's truck, and dropped St. Clair and Graham off at his residence at Sibley. Burell returned a short time later, in a different vehicle, and picked up Graham. Graham stated that he was going to Downsville with Burell to collect some money someone owed to Burell. St. Clair next saw the two at his residence at about 2:30 or 3:00 A. M., at which time Graham had a cut on his hand and blood on his clothing. Investigators found indications at the crime scene that one of the perpetrators cut himself while breaking glass out of the front door in making the entry into the residence. Later on September 1, 1986, St. Clair was again with Burell, at which time Burell had a large amount of cash money in his possession. On the following day, he observed Graham in possession of a large amount of cash money.

WHEREFORE: Affiant prays that a warrant issue herein for the arrest of said accused, that they may be dealt with according to law.

_____
AFFIANT

SWORN TO AND SUBSCRIBED before me this _____ day of October, 1986.

_____
JUDGE

001217



## AFFIDAVIT OF DAN J. GRADY, III

STATE OF LOUISIANA )
                    )ss.
PARISH OF GRANT    )

After swearing to tell the truth, Daniel J. Grady, III,
states as follows:

1. I am an attorney licensed to practice law in the State
of Louisiana. Currently I am an assistant district attorney for
Grant Parish. Earlier in my career I served as an assistant
district attorney in Caddo, Ouachita, Morehouse, East Baton Rouge
and Livingston Parishes. For nine years, I was an assistant
district attorney in Lincoln and Union Parishes.

2. During my approximate 21 years as a prosecutor, I have
had responsibility for thousands of cases and have tried over 400
cases.

3. During 1986 and 1987, I was the chief prosecutor in
Union Parish with responsibility for the cases State vs. Michael
Graham and State vs. Albert Burrell.

4. Following the arrest of Michael Graham and Albert
Burrell in October, 1986, I reviewed the evidence and recommended
to the Lincoln/Union Parish District Attorney that the case
against Graham or Burrell not be presented to the grand jury.
The evidence at that time, in my opinion, was too weak and too
dependent upon witnesses of questionable credibility to support a
prosecution. This assessment was reflected in my case evaluation
memorandum to the district attorney. Notwithstanding my advice,

;326726_1

000139

the district attorney directed me to present the cases to the grand jury and to try them to avoid embarrassment to the sheriff.

5.   I believe that the Union Parish Sheriff was under substantial pressure at the time the charging decision against Graham and Burrell was being made, in part because he had refused FBI assistance for the investigation of the case, and in part because the local press and public were anxious for action on a double homicide which occurred six weeks before any arrests.

6.   The emergence of Olan Wayne Brantley as a witness to a jailhouse confession by Michael Graham, and subsequently as a witness to a jailhouse confession by Albert Burrell, strengthened the prosecution cases against both those defendants.  In fact, it was the availability of the Graham confession (to Brantley) which caused the prosecution to proceed to trial against him prior to Burrell.

7.   In my opinion, Olan Brantley was a credible witness at the trials of both Michael Graham and Albert Burrell, and I believe his testimony played a major role in both convictions.

_____
Dan J. Grady, III

Subscribed and sworn to before me this 17 day of April 1995.

_____
Notary Public

000133

Adjunct Professor of Law, Paul M. Hebert Law Center,
Louisiana State University, Baton Rouge, Louisiana, 2004 to date

Bauer, Darnall, McNulty & Boudreaux
Franklin, Louisiana, Partner, 1964-1982

City Attorney
City of Franklin, Louisiana, 1968-1982

Martindale Hubble, A Rating, 1976 to date

Member, Board of Governor's, Louisiana Judicial College, 2000 to 2004

Member of Louisiana State University Board of Supervisors, 1998 to 2006
Executive Committee, 1999 to 2006,
Vice Chairman 2004-2005,
Chairman 2005 to 2006

Member, Louisiana State Law Institute, 1994 to date

Member, Search Committee for Chancellor,
Louisiana State University Law Center, 1998

Member, Louisiana Sentencing Commission, 1987-1993

Member, Louisiana Child Support Enforcement
Commission, 1984-1986

Member, Louisiana Evidence Code Advisory Committee
Louisiana Law Institute, 1988 to date

Member, Bail Bond Procedure Revision Committee
Louisiana Law Institute, 1992-1994

Member, Board of Trustees, Louisiana District
Attorney's Retirement System, 1990-1997

Chairman, Louisiana Evidence Code Commission
Louisiana District Attorneys Association, 1985-2000

Member, Louisiana Supreme Court Committee to Study
Appellate Court Delay, 1991-1992
Chairman, Long Range Planning Committee

Member, Louisiana Supreme Court Committee to Study
Media in Courtroom, 1993-1995

Member, Louisiana Supreme Court Committee to Study
Revision of Trial Court Instruction Manual

Member, Louisiana Supreme Court Committee to Study
Revision of Rules of Louisiana Judicial Commission
1998

Guest Lecturer, Louisiana Judicial College,
Annual and Special Seminars
1986, 1987, 1988, 1990, 1991, 1994 (2 seminars),
1995, 1997, 2002 (2 seminars)

Guest Lecturer, Louisiana District Attorneys Association
Convention and Seminars
1986, 1987, 1988, 1990, 1992, 2001, 2002 (2 seminars), 2003
Continuing Legal Education Seminar, 2002, 2003

Guest Lecturer, Louisiana State Bar Association,
Criminal Law Section 1986, 1988

Guest Lecturer, Louisiana State University Law School
Evidence Code Seminar, 1988, 1989
Continuing Legal Education Seminar,
2002, 2003, 2004, 2005 (2 seminars each year)

Guest Lecturer:

    Austral University Law School, 2003
    Ditella University Law School, 2003
    Catholic University of Argentia Law School, 2003
    Buenos Aires, Argentina, S.A.

Guest Lecturer:

    East Baton Rouge Bar Association, 1988
    Iberia Parish Bar Association, 1988, 1989
    St. Mary Parish Bar Association, 1994
    Louisiana Association of Criminal Defense Counsel, 1989, 1991
    Lafayette Bar Association, 1990

Co-Author, "Louisiana Sentencing Guidelines Manual,"
West Publishing Co., 1993

Chairman of the Board of Directors
Sterling Sugars, Inc. (Publicly Traded), 1996 to date
Franklin, Louisiana

Member, Board of Directors, 2001 to date
AVOCA, Inc. (Publicly Traded)
New Orleans, Louisiana

Member, Board of Directors
1st National Bank in St. Mary Parish
1995-1996 (merged with Whitney National Bank)

Member, Advisory Board
Whitney National Bank, 1996-1999

Member:

American Bar Association, 1964-1992
Louisiana State Bar Association 1961 to date

Admitted to Practice:

All Courts in Louisiana, 1961
United States District Court, Western District of Louisiana, 1967
United States District Court, Middle District of Louisiana, 1986
United States Court of Appeals, Fifth Circuit, 1976
United States Supreme Court, 1968

Miscellaneous Civil, Professional, and Leadership Activities:

Past President, Louisiana District Attorneys Association
Past President, St. Mary Parish Bar Association
Past President, Franklin Rotary Club
Past President (1975-1980) and Board Member (1972-1980)
of Assumption Parish School Board, a parochial school
system with an elementary (St. John's Academy) and
secondary (Hanson Memorial High School) school with
total enrollment 800 +, Franklin, Louisiana

Honors:

Selected Honorary Member, Order of the Coif, Louisiana State
University Law Center, 2000

Recipient of 1st Annual Bernie Boudreaux Professionalism
Award, presented by the Inn on the Teche, an American Inn of Court;

Recipient of 1st Lifetime Achievement Award,
Presented at five year intervals by the Louisiana District Attorneys Association

Pro Bono:

Mediated settlement of forty-seven year old East Baton Rouge Parish, Louisiana, school
desegregation litigation with the United States Department of Justice
Supervised negotiation of renewal of contract between Superdome Management
Group, Inc., with the Louisiana Superdome & Exhibition District

623971.1

Supervised negotiation of contract between the Louisiana Superdome and
    Exhibition District and the New Orleans Brass (Professional Hockey)
Supervised revision of stadium contract between State of Louisiana and New Orleans
    Saints (National Football League)

623971.1