U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

OCT 2 2 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ALBERT RONNIE BURRELL, et al.,          CIVIL ACTION
            Plaintiffs                   NO. CV01-2679-M

VERSUS

TOMMY ADKINS, et al.,                    JUDGE D. "DEE" DRELL
            Defendants                   MAGISTRATE JUDGE JAMES D. KIRK

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (DOC. # 214)</u>

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, as well as Louisiana state law, by plaintiffs Albert Ronnie Burrell ("Burrell") and Michael Ray Graham ("Graham") on December 26, 2001. The named defendants are Tommy Adkins (former district attorney of Union and Lincoln Parishes, official capacity only[1]), Robert Levy (current district attorney of Union and Lincoln Parishes, official capacity only), Dan J. Grady III[2] (former Union Parish Assistant District Attorney), John and Jane Does employed by the Union and Lincoln Parishes' district attorney's office (individual capacities), Kenneth Larry Averitt

_____

[1] The individual liability claims against Adkins were dismissed by judgment of the Fifth Circuit on June 28, 2004 (Doc. Item 125).

[2] The action against Grady was dismissed by judgment of the Fifth Circuit on June 28, 2004 (Doc. Item 125).

(former sheriff of Union Parish, individual and official capacities), Robert Buckley (current sheriff of Union Parish, official capacity only), Donald Holdman (former Union Parish Deputy Sheriff, individual capacity only), Monty Forbess (former Union Parish Deputy Sheriff, individual capacity only), Elmer Hearron (former Union Parish Deputy Sheriff, individual capacity only).[3]

Plaintiffs Burrell and Graham each spent more than thirteen years on death row at the Louisiana State Penitentiary in Angola after having been convicted of a double murder ("the Frost murders") by a jury in the Louisiana Third Judicial District Court in Union Parish. State v. Burrell, 561 So.2d 692 (La. 1990), cert. den., 498 U.S. 1074, 111 S.Ct. 799 (1991); State v. Graham, 566 So.2d 403 (La. 1990). On March 3, 2000, Union Parish District Court Judge Woodard granted a new trial motion filed on behalf of Graham, finding that Graham was entitled to a new trial because the defendants, and thus the jury, had not been given all of the facts and evidence known to the prosecution, and that the information which was withheld could very likely have changed the outcome of the trial. The state district court judge found the prosecution had withheld significant exculpatory evidence and impeachment

---

[3] Plaintiffs' claims against John and Jane Does employed by the Union and Lincoln Parish District Attorney's Office, John and Jane Does employed by the Union Parish Sheriff, John and Jane Does employed the North Louisiana Criminalistics Laboratory, John and Jane Does employed by defendants' unnamed insurers, and Jim Hood have been dismissed (Doc. Item 159).

evidence bearing on the credibility of its main witnesses.   On December 28, 2000, the Louisiana Attorney General filed a dismissal of all charges against Graham and Burrell, stating there was a "total lack of credible evidence" linking either man to the crimes and that it would be a "breach of ethics to proceed to trial without evidence that would make it reasonable to argue to a jury that proof beyond a reasonable doubt exists in this instance" (Doc. Item 207, Ex. I; Doc. Item 225, Ex. 42).   Graham was released from prison in December 2000, and Burrell was released from prison pursuant to a joint motion by Burrell and the State of Louisiana on January 2, 2001.

Plaintiffs allege the named defendants maliciously, intentionally, and with deliberate indifference to their constitutional rights, conspired to indict, arrest, detain, prosecute, and obtain death penalties against the plaintiffs on the basis of coerced false witness statements, affidavits, and testimony, and withheld exculpatory and impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1207 (1963).   Plaintiffs also allege supplemental state law claims against all defendants for intentional infliction of emotional distress (all defendants), malicious prosecution, wrongful conviction and wrongful imprisonment, and a state law claim against the "sheriff's department defendants" for false arrest.   For relief, plaintiffs ask for general and punitive

3

monetary damages.

Defendants Adkins and Levy filed a motion for summary judgment with a statement of undisputed facts and documentary evidence (Doc. Item 214), and a reply brief (Doc. Item 241). Defendants Buckley, Averitt, Holdman, and Forbess also filed a motion for summary judgment with supporting evidence (Doc. Items 207, 221) and a reply brief (Doc. Item 230), which will be considered in a separate report and recommendation. Plaintiffs filed briefs in response to the motions for summary judgment, with an affidavit and a statement of undisputed facts[4] (Doc. Items 224, 225, 226, 228, 230). Adkins' and Levy's motion for summary judgment is now before the court for consideration.

Law and Analysis

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

---

[4] Much of plaintiffs' unduly long "statement of undisputed facts" actually consists only of arguments made one sentence at a time. Not only does this not comply with the court's rules, it resulted in a significant waste of judicial time.

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to

5

establish the existence of a genuine issue of material fact for trial.   In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

### District Attorneys' Motion for Summary Judgment

Defendants Adkins and Levy are defendants in their official capacities as former District Attorney and current District Attorney, respectively, of Union Parish.  Levy had no role in Graham's and Burrell's criminal case and has been named an official-capacity defendant solely as Adkins' successor-in-interest, since his office will be liable for any liability incurred by Adkins in his official capacity.

Adkins and Levy filed a motion for summary judgment or for partial summary judgment on the basis of absolute immunity for their actions in initiating the prosecution against Burrell and Graham for the murders of William and Callie Frost.  Defendants claim absolute prosecutorial immunity pursuant to Imbler v. Pachtman, 424 U.S. 409, 427-28, 96 S.Ct. 984 (1976), and Eleventh Amendment absolute immunity pursuant to Monell v. New York City

6

<u>Dept. of Social Services</u>, 436 U.S. 658, 689, 98 S.Ct. 2018, 2035 (1978). Defendants also contend plaintiffs' <u>Monell</u> claims should be dismissed for failure to allege sufficient facts, and that the <u>Monell</u> claim should be dismissed for failure to show that Adkins and Levy violated plaintiffs' constitutional rights. Finally, defendants allege plaintiffs' supplemental state law claims are barred because Adkins is absolutely immune from suit or, in the alternative, they should be dismissed without prejudice.

## A. Immunity and Boilerplate Pleadings

Adkins' and Levy's claims as to Eleventh Amendment immunity, absolute prosecutorial immunity claims,[5] and "boilerplate" <u>Monell</u> pleadings have previously been considered by the court. Their claims of Eleventh Amendment immunity were denied, their claims of absolute prosecutorial immunity from the state and federal claims against them in their individual capacities, pursuant to <u>Imbler v. Pachtman</u>, were granted and their motion to dismiss the "boilerplate" <u>Monell</u> claims was denied; this judgment was affirmed on appeal by the Fifth Circuit (Doc. Items 18, 23, 35, 65, 90, 123). Since reconsideration by the court of these issues is barred by res judicata, defendants' motion for summary judgment on these

---

[5] Adkins' and Levy's claims of absolute prosecutorial immunity in their official capacities, from both the Section 1983 claims and the state law claims, are discussed separately below.

issues should be denied as moot.[6]

## B. Official Capacity Prosecutorial Immunity

Next, Levy and Adkins claim they are entitled to absolute prosecutorial immunity in their official capacities from the Section 1983 claims.

Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999), citing Monell, 436 U.S. at 691 n. 55, 98 S.Ct. at 2036 n. 55.   Unlike government officials sued in their individual capacities, municipal and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under Section 1983.  Burge, 187 F.3d at 467, citing Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162 (1993).

A Louisiana District Attorney, sued in his official capacity, is a local, not a state, government official.  Burge, 198 F.3d at 469, citing Mairena v. Foti, 816 F.2d 1061, 1064 n.1 (5th Cir. 1987), cert. den., 484 U.S. 1005, 108 S.Ct. 697 (1988).  Also, Gibson v. State, 94-0476 (La. App. 4th Cir. 10/27/94), 644 So.2d

---

[6] Defendants' re-urging of these matters has also wasted considerable judicial time.  It's noted that defendants' obtained permission of the court to file exceedingly long briefs.  Had they limited their arguments to pertinent issues still pending, it would have been unnecessary to file such long and repetitious briefs.

1148, rev'd on other grounds, 1999-1730(La. 4/11/00), 758 So.2d 782, cert. den, 531 U.S. 1052, 121 S.Ct. 656 (2000).   Under Louisiana law, a district attorney, like a sheriff, is virtually an autonomous local government official.   Burge, 187 F.3d at 469, citing La. Const. Art. 5, §§ 26, 27 and Art. 6, §§ 5(G), 7(B); La. R.S. 16:1, et seq.   Louisiana's constitutional and statutory provisions indicate that a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office.   Burge, 187 F.3d at 469, citing La. Const. Art. 5, §§ 26 and Art. 6, §§ 5, 7, 25; La. R.S. 16:1, et seq.; La. R.S. 11:1581-1587.   Therefore, in a suit against a district attorney in his official capacity under Section 1983 for constitutional torts caused by the district attorney's policies, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity.   Accordingly, any judgment against a district attorney in his official capacity must be recovered from his liability insurer or the public funds controlled by him or his successor in office.   Burge, 187 F.3d at 470.

Consequently, the district court cannot grant summary judgment for a District Attorney in his official capacity on the basis of absolute prosecutorial immunity because that form of personal or individual immunity is not available in a Section 1983 official capacity suit.   Burge, 187 F.3d at 470, citing Leatherman, 507 U.S.

at 166, 113 S.Ct. at 1162. Also, <u>Turner v. Houma Mun. Fire and Police Civil Service Bd.</u>, 229 F.3d 478 (5th Cir. 2000), citing <u>Hafer v. Melo</u>, 502 U.S. 21, 25, 112 S.Ct. 358 (1991)("[T]he only immunities available to the defendant in an official capacity action are those that the governmental entity possesses."). Therefore, Adkins and Levy are not entitled to absolute immunity in their official capacities from plaintiffs' Section 1983 action.

Since there are no genuine issues of material fact, Adkins' and Levy's motion for summary judgment on the issue of absolute immunity from Section 1983 claims in their official capacities should be denied.

## C. Monell Claims

Finally, defendants allege there is no evidence to support plaintiffs' claims of violation of their constitutional rights. As a factual claim raised pursuant to a motion for summary judgment, this claim has not previously been considered by the court. Plaintiffs argue there are genuine issues of material fact as to whether (1) Adkins, acting as the District Attorney of Union Parish, caused plaintiffs to be falsely arrested and imprisoned, (2) Adkins' violated plaintiffs' right to due process by deciding to prosecute them for political reasons and without probable cause, and deliberately withheld <u>Brady</u> material, and (3) Adkins knowingly maintained an official policy of grossly inadequate supervision and training within the District Attorney's Office, designed to

10

facilitate and condone his office's non-disclosure of Brady material to criminal defendants, in violation of plaintiffs' constitutional rights in this case.

### 1. Burden of Proof Under Monell

Defendants contend they are entitled to a judgment in their favor "as a matter of law" because plaintiffs rely on the constitutional violations which allegedly occurred during the trials of the plaintiffs.  Defendants argue plaintiffs have not adduced any evidence of any official policy of Adkins' office which violated plaintiffs' constitutional rights.  Defendants further argue the "single incident" of constitutional violations is insufficient to prove liability under Monell.

In overturning plaintiffs' convictions, the state court judge held there had been numerous violations of plaintiffs' right to exculpatory and impeachment evidence by the prosecutors in this case (Doc. Item 225, Pl. Ex. pp. 1199-1236); those violations constituted violations of plaintiffs' constitutional rights.  However, defendants argue plaintiffs must prove an official custom or policy for the parish to be held liable for their violations of plaintiffs' constitutional rights pursuant to Monell.

Municipalities cannot be held liable for constitutional torts under Section 1983 on a respondeat superior theory, but they can be held liable when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury. Burge, 187 F.3d at 471, citing Monell, 436 U.S. at 689, 98 S.Ct. at 2018.   Thus, a plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal policy, or custom, that caused the plaintiff's injury.  Board of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).  The "official policy" requirement may be proven in at least three different ways: (1) when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.  Burge, 187 F.3d at 471, and cases cited therein.

A district attorney is the independent and final official policymaker for all administrative and prosecutorial functions of his office.  Burge, 187 F.3d at 469.  Municipal liability under Section 1983 attaches where a deliberate choice to follow a course

of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  Therefore, municipal liability may attach to a *single decision* to take unlawful action made by a municipal policymaker.  <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986).  A single act by a decisionmaker with final authority in the relevant area constitutes a "policy" attributable to the municipality itself.  <u>Bd. of Cty. Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997).  Also, <u>Burge</u>, 187 F.3d at 470-471.  Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken *only once* or to be taken repeatedly.  <u>Pembauer</u>, 475 U.S. at 481, 106 S.Ct. at 1299.

The plaintiff must also show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.  Accordingly, proof that a municipality's *authorized decision maker* has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  <u>Board of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 404, 117 S.Ct. at 1388-90.

In the case at bar, plaintiffs argue their case falls within the second and third methods listed above, contending the actions

13

of policymaker District Attorney Adkins violated plaintiffs' constitutional rights (actions of the policy maker represent official policy) and, also, that Adkins knowingly failed to take any steps to cure misconduct by then Assistant District Attorney Grady (the prosecutor in plaintiffs' cases) which would probably result in violations of plaintiffs' constitutional rights.

In In re Jordan, 2004-2397 (La. 6/9/05), 913 So.2d 775, the Louisiana Supreme Court discussed at length the duty of a prosecutor to disclose exculpatory and impeachment evidence to the defense, under the Fourteenth Amendment's Due Process clause, the Louisiana Rules of Professional Conduct, Rule 3.8(d), and Louisiana Code of Criminal Procedure articles 718, 719, and 722. Pursuant to that clear duty, plaintiffs have alleged Monell claims for violations of their constitutional rights by alleging the direct involvement of Adkins in their prosecutions.

Moreover, the fact that the state court judge found and held plaintiffs' constitutional rights had been violated by the prosecutors (and others) through numerous instances of withholding exculpatory and impeachment evidence indicates Adkins and Levy (as Adkins' successor in office) are liable in their official capacities for violations of plaintiffs' civil rights, as discussed below.

2. Brady Violations under Monell and Res Judicata

Plaintiffs' allege Adkins and Levy are liable to them for the

14

Brady violations committed at plaintiffs' trials, which violated plaintiffs' constitutional rights.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1207 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991). The determinative question is whether the evidence was material; that is, whether there is a reasonable probability that, had the report been disclosed to the defendant the result of the proceeding would have been different. Wilson, 28 F.3d at 434, citing Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Spence v. Johnson, 80 F.3d 989, 994 (5th Cir.), cert. den., 519 U.S. 1012, 117 S.Ct. 519 (1996), citing Bagley, 413 U.S. at 682, 105 S.Ct. at 3383. The materiality of Brady material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state. Wilson, 28

F.3d at 439.  The prosecutor is not required to deliver his entire file, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. Wilson, 28 F.3d at 435.

Information contained in police reports may be Brady material. The prosecution is deemed to have knowledge of information available to it and the failure to provide that information when requested is a violation of the Brady rule.  Williams, 940 F.2d at 133 (remanding for evidentiary hearing on materiality of police report in which victim's wife, who was the only witness to identify defendant as the murderer, admitted to having visited a methadone clinic shortly before the murder).

When evaluating a claim of impeachment evidence withheld in violation of Brady, the court must consider the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony. U.S. v. Weintraub, 871 F.2d 1257, 1262 (5th Cir. 1989). The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000), cert. dism'd, 531 U.S. 1134, 121 S.Ct. 902 (2001).  Accordingly, in determining whether there is a reasonable probability that the

outcome of the trial would have been different, the court's focus is whether the withheld evidence contains information that could have been used, on cross-examination, to significantly undermine the witness's credibility. <u>Bagley</u>, 473 U.S. at 675-76, 105 S.Ct. at 3380.

In the case at bar, plaintiffs contend Adkins was actively engaged in plaintiffs' prosecutions, as evidenced by his conducting portions of the grand jury proceedings, selecting the juries at both trials, attending both trials, monitoring the progress of both trials, handling the opposition to Burrell's appeal, and making the decision to seek the death penalty in both cases. Plaintiffs further allege Adkins deliberately withheld exculpatory and impeachment evidence from both Burrell and Graham. Plaintiffs argue Adkins withheld from plaintiffs (1) a recorded and transcribed statement of Deputy Monty Forbess' group interview of Glenda St. Clair, Jackie St. Clair, Nicki St. Clair, and Amy Opal, which allegedly provides impeachment evidence concerning the date on which the witnesses testified at trial they saw Graham and Burrell together, (2) the amount of money Jackie St. Clair testified at trial that she saw in Burrell's possession after the murders, (3) Amy Opal's trial testimony that she saw Graham and Burrell together counting a large amount of money and blood on Graham's arm on the night of the murders, and (4) Deputy Forbess' conduct in pre-interview coaching of the witnesses, allowing the

17

witnesses to discuss and coordinate their statements, and posing suggestive questions to Amy Opal.   Plaintiffs contend Adkins was aware of the existence of the transcribed interviews and failed to disclose them to plaintiffs.

These factual issues were raised and litigated in Graham's hearing on his motion for new trial before Judge Cynthia T. Woodard, of the Third Judicial District Court, Union Parish, Louisiana.   Judge Woodard made findings on the factual issues in her ruling on Graham's motion for a new trial (Doc. Item 225, Pl. Ex. pp. 1199-1236):

> "The Court finds that the defendant has met his burden of
> proving that he is entitled to a new trial because the
> State repeatedly withheld material evidence favorable to
> the defendant in violation of <u>Brady v. Maryland</u>, and
> because of certain other newly discovered evidence.
> Because the jury did not have all of the correct facts,
> the jury's assessment of the weight of the evidence, and
> the jury's determination of the credibility of certain
> witnesses was affected.   From the record, it is clear
> that if the jury had been able to consider the items of
> evidence favorable to the defendant which were wrongfully
> withheld by the State, and if the jury had been able to
> consider the other newly discovered evidence, there is a
> reasonable probability that the result of this trial
> would have been different."

Judge Woodard specifically listed and discussed at length the numerous items of material evidence which had been withheld from the defendants by the prosecutors, and concluded the jury had been misled about certain areas of the law and many of the facts of the case such that the court could have no confidence in the outcome of the trial.   The items of evidence found to have been withheld by

the prosecutors were: (1) the fact that the state's main witness,
Olan Wayne Brantley, had serious mental health illness, including
a pattern of claiming that others had confessed to him in jail, (2)
the fact that Brantley had on several occasions attempted to use
supposed jailhouse confessions on murder charges to cut better
deals for himself, (3) the fact that the State reduced Brantley's
charges and jail time pursuant to a plea bargain after he revealed
plaintiffs' alleged jailhouse confessions and before he testified
in plaintiffs' trials, (4) Brantley testified incorrectly that he
did not receive anything in return for his testimony and the
prosecutor failed to correct Brantley's testimony at trial, (5)
plaintiffs were provided with an incomplete rap sheet on Brantley,
which did not disclose that he was found "not guilty by reason of
insanity" in 1981 and was found mentally incompetent to stand trial
in Ouachita Parish in 1982, (6) exculpatory statements by Janet
Burrell to the police, (7) a prior inconsistent statement by Jackie
St. Clair which contradicted her trial testimony, (7) prior
inconsistent statements by Amy Opal (now Hutto) which contradicted
her trial testimony, (8) a prior inconsistent statement by Glenda
St. Clair which contradicted her trial testimony, (9) a pretrial
statement by Amy Opal Hutto which was exculpatory to both
plaintiffs, (10) information that victim Callie Frost's wedding
ring was missing when her body was discovered (though it was not
necessarily exculpatory evidence), and (11) an exculpatory pretrial

statement by Kenneth St. Clair which could have been used to impeach his trial testimony.  Judge Woodard made specific findings in many instances that the prosecutors had "deliberately withheld" exculpatory and impeachment evidence, "deliberately elicited and failed to correct" false testimony, and "actively misled" the jury (Doc. Item 225, Ex. 39).  These factual findings formed the basis of Judge Woodard's judgment granting Graham's motion for new trial and, subsequently, Burrell's motion for new trial, as well.

This court finds the principles of res judicata or collateral estoppel are applicable in this case.  Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.  Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.  Parklane Hosiery Co., Inc., 439 U.S. 322, 326, 99 S.Ct. 645, 649 (1979).  Offensive collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.[7]  Hardy v.

---

[7] A court may raise the exception of res judicata sua sponte (1) when both actions were brought before the same court, or (2) in situations in which all relevant date and legal record are before the court and demands of comity, continuity in law, and essential justice mandate judicial invocation of res judicata

<u>Johns-Manville Sales Corp.</u>, 681 F.2d 334, 338 (5th Cir. 1982), citing <u>Parklane Hosiery Co., Inc.</u>, 439 U.S. at 327, 99 S.Ct. at 649.

In deciding the preclusive effect of a state court judgment in federal court, the courts are guided by the full faith and credit statute, which provides that "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Accordingly, the court must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect. <u>Matter of Gober</u>, 100 F.3d 1195, 1201 (5th Cir. 1996). Also, <u>In re Keaty</u>, 397 F.3d 264, 270 (5th Cir. 2005); <u>Quinn v. Monroe County</u>, 330 F.3d 1320, 1329 (11th Cir. 2003), and cases cited therein. Also, <u>Hogue v. Royse City, Tex.</u>, 939 F.2d 1249, 1252 (5th Cir. 1991). Issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal Section 1983 suit as

---

principles. <u>Cisco Systems, Inc. v. Alcatel USA, Inc.</u>, 301 F.Supp.2d 599, 602 (E.D.Tex. 2004), citing <u>Mowbray v. Cameron Cty., Texas</u>, 274 F.3d 269, 281 (5th Cir. 2001), cert. den., 535 U.S. 1055, 122 S.Ct. 1912 (2002). Since a federal district court does not have appellate jurisdiction to review, modify, or nullify a final order of a state court, res judicata bars a party from litigating an issue in state district court, then later pursuing the issue in federal district after receiving an adverse ruling in state court, as if the state court had never addressed the issue. <u>American Furniture Co., Inc. v. International Accommodations Supply</u>, 721 F.2d 478 (5th Cir. 1981).

they enjoy in the courts of the State where the judgment was rendered. Allen v. McCurry, 449 U.S 90, 97-99, 101 S.Ct. 411, 416-417 (1980).

In Louisiana, under res judicata as provided in La.R.S. 13:4231,[8] once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties.  The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action.  The doctrine of res judicata is *not* discretionary and mandates the effect to be given to final judgments. American Medical Enterprises, Inc. v. Audubon Ins. Co., 2007 WL 1651059, 2005-2006 (La. App. 1st Cir. 6/8/07),

---

[8] La. R.S. 14:3241, Res Judicata, provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

22

__So.2d__, citing Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 2001-0993 (La. App. 1st Cir. 8/4/04), 880 So.2d 129, 135, writ den., 2004-2426 (La. 1/28/05), 893 So.2d 72.

District Attorney Adkins was the party "in privy" with the State of Louisiana in the state criminal proceedings, since he, as the District Attorney, represented the State in the criminal prosecutions of Graham and Burrell. At Graham's motion for new trial based on newly discovered evidence, Adkins presented evidence, testimony, and argument in the state court hearing in defense of Graham's conviction, attempting to persuade the judge that Graham's constitutional rights had not been violated. Graham prevailed on his motion by proving there was new evidence that was not discoverable prior to or during trial which, if it had been introduced at trial, probably would have caused the trier of fact to reach a different verdict; Graham proved the new evidence was so material that it ought to have produced a verdict different from that rendered at trial. See State v. Maize, 94-0736 (La. App. 1st Cir. 5/5/95), 655 So.2d 500, 517, writ den., 95-1894 (La. 12/15/95), 664 So.2d 451. The state district judge granted both Graham's and Burrell's motions for new trial due to the violations of their constitutional rights. Since this court must afford full faith and credit to the state judge's findings and judgment, defendants are precluded from relitigating the issues of whether or not Adkins violated plaintiffs' constitutional rights by

withholding Brady material from them in their criminal proceedings. Compare, Black v. Arceneaux, 1998 WL 13861 (E.D.La. 1998).

Therefore, the only issue before the court is whether the Brady violations were committed pursuant to "official policy." Since former District Attorney Adkins was found to have been directly involved in the alleged Brady violations, plaintiffs have satisfied the requirements of Monell by proving that actions of the policy maker, which represented official policy, violated their constitutional rights. Thus, the real party in interest in this suit against Adkins and Levy in their official capacities, the office of the District Attorney of Union Parish (currently held by Levy), is liable to plaintiffs.

Since there are no genuine issues of material fact which would preclude a summary judgment in favor of Graham and Burrell, on the issue of whether Adkins, in his official capacity, violated Graham's and Burrell's constitutional rights, defendants' motion for summary judgment should be denied and judgment should be entered in favor of plaintiffs on their civil rights claims against Adkins and Levy in their official capacities on the Section 1983 issue of violations of plaintiffs' constitutional rights for Brady violations. Only the issue of damages remains for trial.

### 3. Failure to Train Under Monell

Plaintiffs also allege Adkins failed to adequately train his assistant district attorneys, and/or failed to implement

24

appropriate policies with respect to the disclosure of evidence such as Brady material, and that failure was a cause of the violations of Burrell's and Graham's constitutional rights.   In light of the court's findings as to defendants' liability established above, this claim appears to be moot.   However, the parties' arguments are set forth below.

In Burge, the Fifth Circuit stated there are limited circumstances in which an allegation of failure to train can be the basis for liability under Section 1983.   Only where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a policy or custom that is actionable under Section 1983.   The focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform, and it must be proven that the identified deficiency in training actually caused the failure of the employee or officer to perform his duty constitutionally.   In the Fifth Circuit, this standard governs the determination of whether the district attorney is liable under Section 1983 for failure to establish policies and procedures obviously needed to prevent Brady violations.   Burge, 187 F.3d at 472.

Prosecutors' offices have a constitutional obligation to establish procedures and regulations to insure communication of all

relevant information on each case, including promises made to informants in exchange for testimony in that case, to every lawyer who deals with it. Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763 (1972). Deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. Giglio, 405 U.S. at 153, 92 S.C. at 766. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected, or when it suppresses material evidence. Giglio, 405 U.S. at 153, 92 S.C. at 766. District Attorneys should implement policies, training and procedures to insure the acquisition of Brady material from the Sheriff's Office, its secure distribution to the appropriate assistants, and its disclosure to criminal defendants when the evidence is material to guilt or punishment. Burge, 187 F.3d at 473.

In this claim, plaintiffs are alleging the second and third way to plead a Monell violation. Plaintiffs allege that either (1) no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right, or (2) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately

indifferent to the need.  <u>Burge</u>, 187 F.3d at 471.

Defendants show, in their statement of undisputed facts, that the official policy of the Union Parish District Attorney's Office "recognized the responsibility of State prosecutors to comply with the requirements of <u>Brady</u>" and that "assistant district attorneys were expected to discharge their obligations under <u>Brady</u>." Adkins stated in his deposition that he had a written policy manual while he was in office, although he does not have a copy of it anymore (Doc. Item 225, Ex. 24, pp. 894-895, 897).  Defendants also show that Adkins encouraged and paid for his Assistant District Attorneys to attend the Louisiana District Attorneys Association continuing legal education seminars (Doc. Item 225, Ex. 24, p. 899).

Plaintiffs contend that, not only did Adkins tacitly condone the <u>Brady</u> violations in their cases, but that Adkins had an extensive and direct role in plaintiffs' prosecutions and deliberately exercised his official, supervisory authority to affirmatively direct and tacitly encourage violations of plaintiffs' constitutional rights by both Grady and the Sheriff's Office.  Plaintiffs also contend Adkins was aware that Grady misunderstood his <u>Brady</u> obligations to the defendants.  Plaintiffs argue Adkins did not have any office policies with regard to obtaining or disclosing <u>Brady</u> material.  Plaintiffs further argue that, according to Adkins' deposition, Adkins did not supervise his

assistants, instead assuming they were providing <u>Brady</u> material to the defense on request (Doc. Item 225, Vol. 2, Ex. 24, pp. 151).

In the case at bar, Adkins contends he created a policy manual for the District Attorney's office from a compilation of such manuals from Ouachita Parish, Orleans Parish, East Baton Rouge Parish, and Caddo Parish, but he no longer has a copy of it and was unable to produce one (Doc. Item 225, Ex. 20, p. 895). In his deposition, Grady testified Adkins had a policy manual, but he did not recall whether there was anything in it concerning disclosure of exculpatory and impeachment evidence to defendants, nor did he recall any office policies regarding such evidence (Doc. Item 225, Ex. 20, p. 831).

With regard to training, Grady testified in his deposition (Doc. Item 225, Ex. 20, p. 830), "I did the training. ...I wasn't the one that needed to be trained," "Tommy Adkins did not instruct me on Brady. ...I instructed him." Grady admitted, however, that any "training" he provided to others was on an informal question and answer basis (Doc. Item 225, Ex. 20, p. 831). Grady further testified that he attended DA's Association seminars "as often as he could." Grady also testified in his deposition that Adkins was present during most, if not all, of Graham's trial, but did not recall whether Adkins was present during Burrell's trial (Doc. Item 225, Ex. 20, p. 828).

Clearly, there are genuine issues of material fact with regard

28

to whether Adkins, in his official capacity, implemented policies, training and procedures to ensure the acquisition of <u>Brady</u> material from the Sheriff's Office, its secure distribution to the appropriate assistants, and its disclosure to criminal defendants, whether the existing practice was so inadequate that it was likely to result in the violation of constitutional rights and, if so, whether Adkins was deliberately indifferent to the risks of the inadequate supervision and training, which preclude a summary judgment on this issue.  Ordinarily, defendants' motion for summary judgment would be denied on these grounds.  However, as stated above, defendants' motion should be denied as moot.

4. Section 1983 False Arrest and False Imprisonment Claims

Plaintiffs contend Adkins did not have probable cause to have the grand jury investigate them for the murders, which resulted in their false arrest and imprisonment.  It is noted that, at the time of the grand jury proceedings, plaintiffs had already been arrested; they have not made any argument concerning the validity of the warrants for their arrests.  Instead, plaintiffs argue that Adkins, even though he did not have probable cause to believe plaintiffs had committed the murders, presented evidence to the grand jury which was manufactured and/or false and suppressed exculpatory evidence.[9]   Plaintiffs contend the reason Adkins

---

[9] In <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-487, 114 S.Ct. 2364, 2372 (1994), the Supreme Court held, in a Section 1983 case, that in order for a state prisoner to recover damages for

decided to prosecute them was to save Sheriff Averitt embarrassment; this contention is supported by the affidavit of the prosecuting Assistant District Attorney, Dan Grady, who stated that, although he recommended that plaintiffs be released and not prosecuted due to lack of credible evidence linking them to the murders, Adkins ordered him to present the case to the Grand Jury in order to save Sheriff Averitt embarrassment (Doc. Item 225, Exs. 30, 31). Plaintiffs argue that, as a result of the prosecution with presentation to the grand jury of false testimony, as well as the suppression of exculpatory and impeachment evidence which should have been given to the grand jury, they were indicted and falsely imprisonment. Plaintiffs claim Adkins actively misled the grand jury. Adkins argues the plaintiffs are not entitled to review of the decision to prosecute and that, in any event, the Grand Jury found there was sufficient evidence to prosecute.

It is reiterated here that the claims against Adkins are in his official capacity only. A suit against a district attorney in his official capacity under Section 1983 must be for constitutional

---

an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254, where a judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction or sentence. Obviously, this prerequisite has been met.

torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of <u>Brady</u> material. See <u>Burge</u>, 187 F.3d at 470. The issues raised in the "false imprisonment/false arrest" claims are necessarily identical to the <u>Monell</u> claims discussed above, since they both involve the same policies. Therefore, defendants' motion for summary judgment should be denied as moot on this issue. However, some of the parties' arguments are addressed below.

Next, it is noted that the accused is not entitled to judicial oversight or review of the decision to prosecute. <u>Albright v. Oliver</u>, 510 U.S. 266, 274, 114 S.Ct. 807, 813 (1994), and cases cited therein. Initiation of criminal proceedings without probable cause does not violate substantive due process. A claim of malicious prosecution does not, without more, state a constitutional claim cognizable under Section 1983. <u>Castellano v. Fragozo</u>, 352 F.3d 939, 942 (5th Cir. 2003), cert. den., 543 U.S. 808, 125 S.Ct. 31, 33 (2004).

Moreover, certain constitutional protections afforded defendants in criminal proceedings have no application before the grand jury. The grand jury does not sit to determine guilt of innocence, but to assess whether there is adequate basis for bringing a criminal charge. The suspect under investigation by the grand jury does not have a right to testify or to have exculpatory evidence presented. Therefore, the prosecutor does not have a

legal obligation to present exculpatory evidence in his possession to the grand jury. U.S. v. Williams, 504 U.S. 36, 49-52, 112 S.Ct. 1735, 1743-1745 (1992).

However, additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation; for instance, the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection, such as the Fourth Amendment if the accused is seized and arrested, or other constitutionally secured rights if a case is further pursued, and some such claims may be made under 42 U.S.C. § 1983. Castellano, 352 F.3d at 953-954. The manufacturing of evidence and knowing use of perjured testimony attributable to the state is a violation of due process. Castellano, 352 F.3d at 958.

The constitutional torts of false arrest, unreasonable seizure, and false imprisonment require a showing that there was no probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir.), cert. den., 534 U.S. 817, 122 S.Ct. 46 (U.S. 2001). See also, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964) (the right to be free from arrest without probable cause is a clearly established constitutional right).

In the case at bar, plaintiffs allege Adkins did not have probable cause to initiate the prosecution due to the lack of credible evidence against Burrell and Graham, but decided to

32

present the case to the grand jurors for them to decide whether there was probable cause.  In their statement of undisputed facts (Doc. Item 214), Adkins and Levy show that Adkins empaneled the Grand Jury to review evidence and to determine if any indictments should be handed down and that Burrell and Adkins were prosecuted after they were indicted (Doc. Item 214).  Graham and Burrell were arrested and incarcerated by October 1986, despite the lack of credible evidence to establish probable cause (Doc. Item 225, Ex. 14).  Judge Woodard made substantial, specific findings regarding the suppression of exculpatory and impeachment evidence which lead to the conclusion, by both Judge Woodard and the Louisiana Attorney General, that there was no credible evidence implicating Burrell and Graham in the murders.  Judge Woodard found specific instances in which the prosecution directly elicited false testimony, failed to correct false testimony, deliberately withheld exculpatory and impeachment evidence from the defendants, and affirmatively misled the jury (Doc. Item 225, Ex. 29).  Presumably, much of the same evidence that was presented to or withheld from the petit jury was also presented to or withheld from the grand jury.

Therefore, the issue in this case revolves back to whether there were any violations of plaintiffs' constitutional rights which were attributable to Adkins' policies or customs with respect to Brady material.  As set forth above, there appear to be genuine issues of material fact concerning whether the Brady violations

were committed pursuant to a municipal policy which preclude a summary judgment on this issue.  However, as stated above, defendants' motion for summary judgment should be denied as moot.

D.  State Law Claims

Graham and Burrell also allege state law claims against Adkins and Levy for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Defendants contend they are entitled a absolute immunity against plaintiffs state law claims and, in the alternative, the court should decline to exercise its supplemental jurisdiction over plaintiffs' state law claims if the federal claims are dismissed.

In the case at bar, the only state law claims remaining against Adkins and Levy are official capacity claims;[10] the

---

[10] In Gibson v. State, 1999-1730 (La. 4/11/00), 758 So.2d 782, cert. den., 531 U.S. 1052, 121 S.Ct. 656 (2000), citing Imbler, 424 U.S. at 427, 96 S.Ct. at 993, the Louisiana Supreme Court stated that prosecutors sued for alleged civil rights violations under Section 1983 have absolute immunity for acts done within the scope of the prosecutors' duties during criminal prosecutions.  However, prosecutors do not have absolute immunity, only qualified immunity, for their misconduct during a preliminary investigation of an unsolved crime, in fabricating evidence and shopping for a favorable expert witness to establish probable cause for arrest, because those acts are "administrative" rather than quasi-judicial.  Prosecutors do not act as advocates of the state before there is probable cause to have anyone arrested.  There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.  See Buckley v. Fitzsimmons, 509 U.S. 259, 275, 113 S.Ct. 2606, 2616-2617 (1993).

individual capacity state law claims have already been dismissed (Doc. Items 65, 90, 123).

It is settled in Louisiana law that the District Attorney and his assistants are absolutely immune from civil liability for actions taken in their official capacities, i.e. within the scope of their duties in initiating and pursuing a criminal prosecution. Sinclair v. State ex rel. Dept. of Public Safety and Corrections, 1999-2290 (La. App. 1st Cir. 11/3/00), 769 So.2d 1270, 1271, writ den., 2000-3331 (La. 1/25/02), 806 So.2d 665, cert. den., 536 U.S. 910, 122 S.Ct. 2369 (2002).[11] See also, Knapper v. Connick, 96-0434 (La. 10/15/96), 681 So.2d 944. This includes instances where the prosecutor suppressed exculpatory information, In re Jordan, 2004-2397 (La. 6/29/05), 913 So.2d 775, 787, and instances of malicious prosecution, Knapper, 681 So.2d at 946-947.

Therefore, Adkins and Levy are entitled to absolute immunity from plaintiffs' state law claims against them in their official capacities. Since there are no genuine issues of material fact which would preclude a summary judgment, plaintiffs state law claims against Adkins and Levy in their official capacities should

---

[11] Defendants also rely on the unpublished Fifth Circuit case of Spikes v. Phelps, 131 Fed.Appx. 47 (5th Cir. 2005), for the proposition that Louisiana does not distinguish between official capacity and individual capacity. That contention does not appear to be correct. See La. Electorate of Gays & Lesbians, Inc. v. Connick, 04-1468 (La. App. 5th Cir. 4/26/05), 902 So.2d 1090, 1091 n.2, writ den., 2005-1309 (La. 12/9/05), 916 So.2d 1062.

be dismissed with prejudice.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Adkins' and Levy's motion for summary judgment on the issues of Eleventh Amendment immunity, absolute prosecutorial immunity from both Section 1983 and state law claims against them in their individual capacities, and "boilerplate" Monell claims be DENIED as moot.

IT IS FURTHER RECOMMENDED that Adkins' and Levy's motion for summary judgment on the issue of absolute immunity in their official capacities from plaintiffs' Section 1983 claims be DENIED.

IT IS FURTHER RECOMMENDED that Adkins' and Levy's motion for summary judgment be DENIED as to plaintiffs' Monell claims for violations of plaintiffs' constitutional rights under Brady and that a judgment on the merits be GRANTED, sua sponte, in favor of plaintiffs and against Adkins and Levy in their official capacities for violations of plaintiffs' constitutional rights under Brady, with only the issue of damages remaining for trial.

IT IS FURTHER RECOMMENDED that Adkins' and Levy's motion for summary judgment be DENIED as moot on the Section 1983 issue of failure to train.

IT IS FURTHER RECOMMENDED that Adkins' and Levy's motion for summary judgment be DENIED as moot on the Section 1983 claims for false imprisonment and false arrest.

IT IS ALSO RECOMMENDED that Adkins' and Levy's motion for summary judgment be GRANTED as to the state law claims against them in their official capacities and that plaintiffs' state law claims be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of October, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE