UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ALBERT RONNIE BURRELL, et al. | CIVIL ACTION NO. 3:01CV2679 |
| -vs- | JUDGE DRELL |
| TOMMY ADKINS, et al. | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is the magistrate judge's report and recommendation (Doc. 264) concerning the motion for summary judgment (Doc. 221) filed by defendants Kenneth Larry Averitt, Robert Buckley, Donald Holdman, and Monty Forbess (collectively, "the Sheriff Defendants"). After an independent review of the record, including the written objections submitted by both sides, and concurring in part with the magistrate judge's findings under the applicable law, this Court adopts the magistrate judge's report and recommendation in part, subject to the modifications set out below.

We note at the outset that the report and recommendation for the most part does an admirable job in setting out the facts of this case and the applicable law. Unless otherwise noted herein, we adopt the report and recommendation's findings of fact and conclusions of law. Because the parties have submitted so many objections to this report and recommendation, we will address each one individually for the sake of clarity. An unfortunate consequence of this structure is increased redundancy, but given the convoluted nature of this case, we value clarity above brevity.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

## PLAINTIFFS' OBJECTIONS

### A. Monell Liability for Averitt's Unconstitutional Actions as a Policymaker

The plaintiffs argue that Averitt, then acting as sheriff and thus a policymaker under a Monell analysis, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), violated the plaintiffs' constitutional rights himself during his participation in the murder investigation. After reviewing the record before us, including the affidavits of

2

Janet and James Burrell and the deposition transcripts of the Sheriff Defendants, we find that there is no evidence that Averitt personally violated the plaintiffs' constitutional rights. For instance, Janet Burrell's affidavit repeatedly speaks only of "sheriff's deputies" blocking her alleged attempted recantation of her testimony against Burrell but is silent as to Averitt. The plaintiffs have failed to present any evidence that Averitt knew that she attempted to recant and either directed or was personally involved in the strong-arm tactics against her. In light of essentially undisputed record evidence that Deputy Forbess, not Sheriff Averitt, directed and conducted the investigation, there is simply nothing in the record showing that Averitt was involved in that matter.

Despite the plaintiffs' further protestations, the record is devoid of evidence showing that Averitt was personally involved in the violations in any other way. For instance, the mere fact that Averitt was present at earlier interviews with Janet Burrell does not in itself suggest wrongdoing, since the record shows that he did not take a significant role in the investigation and played no part in the later use of her testimony.[1] Furthermore, the plaintiffs' mere suggestion that Averitt placed Olan Wayne Brantley in a cell with Michael Graham for the express purpose of fabricating a "jailhouse confession" is insufficient to survive summary judgment. The plaintiffs have brought forward no evidence to support these allegations—no witnesses and no documentation, only argument. The bare fact that Brantley was moved and "snitched" on Graham is not

---

[1] Moreover, whatever Janet Burrell's credibility problems as a witness in other respects (and even her March 17, 2005 deposition testimony concerning her 1998 affidavit is remarkably slippery), her testimony at the trials of both Burrell and Graham was consistent with her statements recorded at the sheriff's office and would not have raised red flags, at least on the basis of internal inconsistency.

3

enough, even if Averitt, as acting sheriff, was required to authorize any cell move in the jailhouse. Simply put, nothing in the record demonstrates that Averitt was directly and personally involved in any alleged constitutional violation. Thus, we adopt the report and recommendation's findings with respect to this prong of the Monell analysis.

### B. Monell Liability for Averitt's Policy of Failing to Train and Supervise

The plaintiffs object to the recommendation that the Section 1983 Monell claims against Averitt's failure to train and supervise be dismissed. The plaintiffs assert that the record indisputably shows that Averitt failed to supervise and train his deputies and that this failure triggers Section 1983 liability. We disagree. At the outset, we must correct the report and recommendation in one legal application, as the plaintiffs point out. Whereas the report states "that there is no Section 1983 liability for failure to supervise," it is clear from case law that that statement is true only for individual capacity claims based on vicarious liability, not official capacity claims under Monell. Burge v. Parish of St. Tammany, 187 F.3d 452, 469-70 (5th Cir. 1999). Thus, the Section 1983 individual capacity claim against Averitt (as well as Holdman, the nominal supervisor of Forbess) for failure to train and supervise must be dismissed without further discussion.

The official capacity claim must also be dismissed, though it requires further explanation. Brown v. Bryan County, OK, 219 F.3d 450 (5th Cir. 2000), cited by the plaintiffs in their objection, clearly allows for liability for even a single instance of failure to train and supervise, provided that failure amounts to "deliberate indifference." The facts of Brown are illuminating. There, the direct offender was a reserve officer (not a

4

full-fledged deputy) who had been hired with no experience and no training and who had already demonstrated a propensity for unnecessarily rough treatment of arrestees over just a few weeks on the job. One of these violent "take-downs" resulted in serious injury to the victim, giving rise to the suit.

The Fifth Circuit began with the principle that "a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable," Id. at 462. In the analysis, the court took for granted that "police officers need at least some training to perform their job safely and effectively." Id. Reviewing the record, the court went on to say that "the jury reasonably could have concluded that it was obvious new reserve officers, while being trained, require at least minimal supervision." Id. The Fifth Circuit emphasized the record evidence that the sheriff knew of the reserve officer's "exuberant and reckless background" and his "record of on-the-job conduct in 'taking down' a number of arrest subjects.'" Id. It held that, in light of these facts, "[t]he jury could have reasonably believed that [the sheriff] was aware of what [the reserve officer] was doing in the field and knew training was required for Burns to perform such tasks. These facts bear on the high predictability of citizen injury by the untrained [reserve officer] and reinforce the jury's finding of deliberate indifference in this case." Id. at 462-63.

This Brown analysis makes it clear that liability for failure to train and supervise under Fifth Circuit precedent is nothing more than the third test for showing "official policy" under Monell, as enunciated in Burge v. Parish of St. Tammany, 187 F.3d 452 (5th Cir. 1999):

5

> (3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390, 109 S.Ct. 1197 ("Only where a municipality's failure to train its employees ... evidences a 'deliberate indifference' to the rights of its inhabitants can ... a shortcoming be ... city 'policy or custom'... actionable under § 1983.").

Burge, 187 F.3d at 471.

Although the plaintiffs cite Brown as support for their position, the factual differences between Brown and this case show that the failure to train and supervise claim here is ripe for summary judgment. Here, there is undisputed record evidence that Averitt hired deputies, including Forbess, who had prior training and experience, and Averitt provided further training in police work. Moreover, Forbess was no mere reserve officer trainee who would require constant—or even significant—supervision; he was an investigating deputy with significant responsibility of his own. Finally, the plaintiffs have adduced no evidence of any past constitutional violations, either of the type complained of here or of another type, much less a pattern of violations. There is nothing in the record, outside of the plaintiffs' allegations, to suggest that Averitt had a policy of failure to train; nothing in Forbess's past behavior to suggest that Averitt should have supervised him more closely; and thus nothing, on the whole, to suggest that Averitt was deliberately indifferent to potential constitutional violations. We adopt the recommendation that summary judgment be granted with respect to the Section 1983 official capacity Monell claims against Averitt for failure to train and supervise.

### C. Averitt's Individual Liability

The plaintiffs object to the recommendation that the individual capacity claims against Averitt should be dismissed. However, for the reasons listed above, we find that Averitt was not directly and personally involved in the alleged constitutional violations and thus may not be individually liable on those claims. The plaintiffs' objections are without merit.

### D. Individual Claims Against Averitt and Holdman for Failure to Supervise

The plaintiffs strenuously assert that the Section 1983 individual capacity claims against Averitt and Holdman for failure to supervise Forbess should survive summary judgment, based partly on their "policy of non-supervision" and partly on an array of allegations including their direct participation in suppressing and fabricating evidence and in creating "an overall environment of impunity." However, as noted above, the Section 1983 individual capacity claims against Averitt and Holdman for failure to supervise must be dismissed. <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 469-70 (5th Cir. 1999).

We reiterate here that after this opinion, there are no remaining claims against Holdman in any capacity. Other than asserting that Holdman was the nominal supervisor of Forbess, the plaintiffs have failed to point to <u>any</u> facts showing his involvement with violating the plaintiffs' rights. Because he was sued only in his individual capacity, summary judgment is appropriate as to all claims against him. This is exactly the same as the reasoning for individual capacity claims against Averitt.

7

### E. State Law Malicious Prosecution Claims

The report and recommendation explains the Louisiana law of malicious prosecution very well, but the analysis stops after finding that the district attorney's office alone may be liable on a malicious prosecution claim. This finding is based on Louisiana law's exclusive grant of prosecutorial discretion to the district attorney. Based on the case law set out below, we find that the Sheriff Defendants may be liable on the state law claim of malicious prosecution, and we must modify the result accordingly.

The plaintiffs object to the recommendation that the state law malicious prosecution claims against the Sheriff Defendants be dismissed, on the grounds that the sheriff's office may be liable under Louisiana case law, citing Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So. 2d 446 (La. 1987) and Jenkins v. Baldwin, 801 So. 2d 485 (La. App. 4 Cir. 2001). Miller involved a suit against a sheriff's department, a lieutenant, and an insurer and was based on the lieutenant's inexcusable delay in securing a detainee's release from jail after it became clear the detainee was innocent. The detainee was released before trial, and the district attorney's office evidently had nothing to do with the behavior complained of; moreover, the district attorney's office was not a defendant in the suit. Because of these distinguishable facts, Miller is of limited utility here.

Jenkins is much closer to the facts of this case, as it involves a suit against, inter alia, a city (sitting in a similar position to the Sheriff Defendants in this case) and a district attorney's office for malicious prosecution after the plaintiff was wrongfully imprisoned on death row for over thirty years. Although the Louisiana Fourth Circuit

8

Court of Appeal ultimately dismissed the malicious prosecution claim against the city, it did so on the basis that the plaintiff had failed to demonstrate malice, an essential element of the malicious prosecution claim. However, the opinion clearly assumes that the city **could** be liable, even though the district attorney's office was involved in the prosecution. This assumption seems to be well supported. See, e.g., Walls v. State, 670 So. 2d 382 (La. App. 3 Cir. 1996) (allowing a malicious prosecution claim to proceed against a sheriff even while dismissing a related claim against the district attorney based on the defense of absolute prosecutorial immunity). Thus, regardless of the district attorney's discretion over the handling of the prosecution, we must disagree with the report and recommendation's finding that the Sheriff Defendants cannot be liable for malicious prosecution.

The defendants argue that even if the Sheriff Defendants could be liable, the district attorney's prosecution of the case breaks the chain of causation, citing, inter alia, Winn v. City of Alexandria, 685 So. 2d 281 (La. App. 3 Cir. 1996) and Kennedy v. Sheriff of East Baton Rouge, 935 So. 2d 669 (La. 2006). Contrarily, these cases do not help the defendants. In Winn, the Louisiana Third Circuit Court of Appeal affirmed the trial court's judgment against the plaintiff on a malicious prosecution claim brought against a police department on the merits, specifically affirming the trial court's determination that there was probable cause to arrest and that the plaintiff had not proved malice, an essential element of the claim. Winn, 685 So. 2d at 284-88. The defendants' characterization of Winn as turning on the grand jury's refusal to indict is, at best, a poor reading of the case; the case says nothing about breaking the chain of causation.

9

Kennedy comes closer to bolstering the defendants' argument; in it, the Louisiana Supreme Court, referring by analogy to malicious prosecution jurisprudence, held that a fast food restaurant could not be held liable on a false imprisonment claim after handing the case off to the sheriff's office, because the sheriff's employees' "independent actions and investigation" broke the chain of causation. Kennedy, 935 So. 2d at 690 n. 20. Here, the Sheriff Defendants argue that their handing the case off to the district attorney's office broke the chain of causation and thus shields them from liability on the malicious prosecution claim. That is incorrect. In Kennedy, the fast food restaurant completely handed off the matter to the sheriff's office and had no further part in it. In this case, by contrast, while the district attorney's office did participate in some interviews after getting involved in the case, the district attorney's employees did not conduct an independent investigation; rather, they participated with the Sheriff Defendants' investigation and depended on the Sheriff Defendants' information for their case. Thus, the rationale of Kennedy does not make sense in the instant case, and the malicious prosecution case may potentially proceed. The distinction is made clearer when one understands also that the restaurant is a private concern, with no cloak of officialty, while the sheriff's department is a public agency charged with duties unattributable to a private company.

Because the report and recommendation does not fully discuss the malicious prosecution claim, we must now determine whether the plaintiff may survive summary judgment on it. In other words, first, has the plaintiff alleged the presence of and produced sufficient evidence to support each element of a state malicious prosecution

claim? As the report and recommendation properly sets out, the six elements of such a claim are:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.

(Doc. 264, p. 39). Clearly the first and third elements are satisfied in this case. Because the plaintiffs have demonstrated numerous genuine issues of material fact as to constitutional violations by the Sheriff Defendants, and because we find that the chain of causation was not broken, the plaintiffs have also demonstrated that the second element is satisfied sufficient to survive summary judgment.

Because the element of probable cause for a false arrest/imprisonment claim involves the same analysis as for a malicious prosecution claim, and because we agree with the report and recommendation's analysis of the probable cause element in the section on the state law false arrest/imprisonment claims (Doc. 264, pp. 41-45), we decline to retread the same ground and instead adopt that rationale here. We find that there are genuine issues of material fact as to whether the Sheriff Defendants had probable cause to continue prosecution.

The fifth element, malice, is explained in <u>Miller v. East Baton Rouge Parish Sheriff's Department</u> as follows :

> [M]alice does not submit readily to definition. It means something more than the fictitious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will. Malice is

11

> found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime. **Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence.** On appellate review such a finding is reversible only if manifestly erroneous or clearly wrong.

Miller, 511 So. 2d at 453 (citations omitted) (emphasis added). Here, there are numerous genuine issues of material fact, as explained elsewhere, as to whether the Sheriff Defendants violated the plaintiffs' constitutional rights, which issues also apply to the question of whether the element of malice is satisfied at the summary judgment stage. Simply put, provided that all of the other elements are sufficiently disputed and supported by proper summary judgment evidence, as they are here, malice is a question for the trier of fact. Finally, we think it obvious that the plaintiffs' time spent on death row and the egregious nature of the alleged conduct satisfies the sixth and final element, damages.

Although we hold that the state law malicious prosecution claim may proceed in some form, we must limit the claims to comport with state tort law and with the evidence presented on summary judgment. As discussed above, there are no genuine issues of material fact as to Averitt and Holdman's personal involvement in the alleged constitutional violations; thus, summary judgment must be granted as to the claims against them in their individual capacities. As to Forbess, because there are genuine issues of material fact as to his personal involvement in the violations which are at the

12

heart of the state law malicious prosecution claim, we deny summary judgment as to that claim against him in his individual capacity. Moreover, because the sheriff may be vicariously liable for the torts of his deputy, as explained in the report and recommendation, summary judgment is denied as to the state law malicious prosecution claims against both Averitt and Buckley in their official capacities.

### F. Fourteenth Amendment Fair Trial Claims

The plaintiffs' final objection is not so much an objection as an argument that because the report and recommendation does not explicitly address their Fourteenth Amendment fair trial claims, those claims should survive summary judgment, citing, inter alia, Castellano v. Fragozo, 352 F.3d 939, 958 (5th Cir. 2003) (en banc). Castellano held that the plaintiff's Fourteenth Amendment claim could proceed along with his other federal and state law claims. In response, the defendants quote from Shields v. Twiss, 389 F.3d 142, 150 (5th Cir. 2004) (en banc), itself interpreting Castellano in the context of a case in which the plaintiff failed to allege sufficiently the defendants had committed constitutional violations by withholding exculpatory evidence from a grand jury. We observe the defendants' reliance on this quote as misplaced, because the plaintiffs here have assuredly raised genuine issues of material fact on the issue of whether the Sheriff Defendants' actions "tainted" the trial proceedings and thus give rise to Fourteenth Amendment fair trial claims. The plaintiffs' Fourteenth Amendment claims involve the same genuine issues of material fact concerning the exclusion of evidence as are discussed elsewhere and thus should survive summary judgment. However, the claims must be limited as the others have been to the responsible parties in the appropriate

capacities. Thus, although not explicitly covered in the report and recommendation, summary judgment is granted on the Fourteenth Amendment fair trial claims as to Averitt and Holdman in their individual capacities; denied as to Forbess in his individual capacity; and denied as to Averitt and Buckley in their official capacities.

## DEFENDANTS' OBJECTIONS

### A. Law Enforcement District's Liability

Defendants assert that the report and recommendation goes beyond the complaint and the motions at issue in finding that the Union Parish Law Enforcement District ultimately would be liable for any damages awarded against the Union Parish Sheriff in his official capacity. We agree and decline to adopt the few references in the report to the Law Enforcement District.

### B. Section 1983 Claims against Buckley

Defendants argue that because current Sheriff Buckley is being sued in his official capacity only, which is derivative of former sheriff Averitt's official capacity liability, the claims against him should be dismissed to the extent that official capacity claims against Averitt are dismissed. We agree and treat official capacity claims against Buckley the same as official capacity claims against Averitt.

### C. Section 1983 False Arrest/Imprisonment Claims

Defendants assert the report and recommendation correctly found that the plaintiffs have failed to raise proper summary judgment evidence that former sheriff "Averitt directly participated in the violation of plaintiffs' constitutional rights by withholding exculpatory or impeachment [evidence]." (Doc. 264, p. 21). Thus,

14

defendants argue, this finding should result in a grant of summary judgment for the false arrest and false imprisonment claims against Averitt. We agree. As explained above, the record simply does not contain proper summary judgment evidence that Averitt was personally involved in violating the plaintiffs' rights. The same reasoning applies to Holdman, since there is likewise no evidence that he was personally involved in violating the plaintiffs' rights. Thus, we grant summary judgment on all Section 1983 claims against both Averitt and Holdman in their individual capacities.

Strictly speaking, the Section 1983 false arrest/imprisonment claims were brought against the Sheriff Defendants in their individual capacities only under Count Two of the complaint. Indeed, Count Two does not even name current sheriff Buckley, despite including him in other counts of the complaint for official capacity claims. Thus, we agree with the defendants that summary judgment should be granted as to Buckley, to the extent any question remains as to his potential liability, since he was not sued on this claim and in any event was not directly involved in the alleged constitutional violations.

Because the record shows that there are genuine issues of material fact as to whether Forbess was personally involved in violating the plaintiffs' rights, summary judgment is denied as to the Section 1983 false arrest/imprisonment claim against him in his individual capacity. Thus, the plaintiffs' Section 1983 false arrest/imprisonment claims lie only against Forbess in his individual capacity.

### D. State Law False Arrest/Imprisonment Claims

The state law false arrest/imprisonment claims require similar analysis, with the important difference that the plaintiffs <u>have</u> sued Averitt and Buckley in their official capacities based on state law <u>respondeat superior</u>. Because, as noted above, there are genuine issues of material fact as to Forbess's liability on the false arrest/imprisonment claims, and because Averitt and Buckley's vicarious liability in the official capacity claims is derivative of Forbess's liability, summary judgment is denied as to the individual capacity claims against Forbess and the official capacity claims against Averitt and Buckley. However, because plaintiffs have failed to submit proper summary judgment evidence that Averitt, Buckley, and Holdman were personally involved in these violations of plaintiffs' rights, summary judgment is granted as to the state law false arrest/imprisonment claims against them in their individual capacities.

### E. State Law Intentional Infliction of Emotional Distress Claims

Defendants argue that the state law intentional infliction of emotional distress claims should be dismissed because of the recommendation that the state law malicious prosecution claims be dismissed. However, in light of our rejection of the recommendation that the malicious prosecution claims be dismissed, this argument is ineffectual. Furthermore, we note that <u>Jenkins v. Baldwin</u>, 801 So. 2d 485 (La. App. 4 Cir. 2001), cited by the defendants in this argument, involved inadvertent exclusion—apparent negligence—whereas the case before involves allegations of intentional exclusion and fabrication of exculpatory and impeachment evidence. The increase in the alleged conduct's severity also brings it within the scope of an

independent claim for intentional infliction of emotional distress. We adopt the recommendation that we deny summary judgment on these claims, with modifications consistent with our above analysis. Summary judgment is denied as to the individual capacity claims against Forbess and the official capacity (<u>respondeat superior</u>) claims against Averitt and Buckley. However, summary judgment is granted as to the individual capacity claims against Averitt, Buckley, and Holdman, since they were not personally involved in the conduct giving rise to the intentional infliction of emotional distress claims.

## SUMMARY

In summary, following this decision, the only remaining claims, other than any claims not addressed in the motion for summary judgment, are:

(a) the Section 1983 claims of false arrest/imprisonment against Monty Forbess in his individual capacity;

(b) any state law <u>respondeat superior</u> claims against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(c) the state law claims of malicious prosecution against Monty Forbess in his individual capacity;

(d) the state law claims of malicious prosecution against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(e) the state law claims of false arrest/imprisonment against Monty Forbess in his individual capacity;

(f) the state law claims of false arrest/imprisonment against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(g) the state law claim of intentional infliction of emotional distress against Monty Forbess in his individual capacity;

17

(h)      the state law claims of intentional infliction of emotional distress against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(i)      the Fourteenth Amendment fair trial claims against Monty Forbess in his individual capacity;

(j)      the Fourteenth Amendment fair trial claims against Kenneth Larry Averitt and Robert Buckley in their official capacities; and

(k)      any remaining Section 1983 claims concerning <u>Brady</u> violations against Monty Forbess in his individual capacity.

## CONCLUSION

Based on the foregoing, the Sheriff Defendants' motion for summary judgment (Doc. 221) will be:

(a)      GRANTED IN PART as to any and all claims against Donald Holdman in any capacity, and those claims will be DISMISSED WITH PREJUDICE;

(b)      GRANTED IN PART as to any and all claims against Kenneth Larry Averitt in his individual capacity, and those claims will be DISMISSED WITH PREJUDICE;

(c)      GRANTED IN PART as to the Section 1983 claims under <u>Monell</u> against Kenneth Larry Averitt and Robert Buckley in their official capacities, and those claims will be DISMISSED WITH PREJUDICE;

(d)      GRANTED IN PART as to the Section 1983 claims of failure to train and failure to supervise against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(e)      GRANTED IN PART as to the Section 1983 claims of false arrest/imprisonment against any and all defendants in their official capacities, and those claims will be DISMISSED WITH PREJUDICE;

(f)      GRANTED IN PART as to the Section 1983 claims of false arrest/imprisonment against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(g) DENIED IN PART as to the Section 1983 claims of false arrest/imprisonment against Monty Forbess in his individual capacity;

(h) GRANTED IN PART as to the Section 1983 malicious prosecution claims against Kenneth Larry Averitt, Robert Buckley, Monty Forbess, and Donald Holdman in any capacity, and those claims will be DISMISSED WITH PREJUDICE;

(i) GRANTED IN PART as to the Section 1985 and Section 1986 conspiracy claims against Kenneth Larry Averitt, Robert Buckley, Monty Forbess, and Donald Holdman in any capacity, and those claims will be DISMISSED WITH PREJUDICE;

(j) GRANTED IN PART as to any state law respondeat superior claims against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(k) DENIED IN PART as to any state law respondeat superior claims against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(l) GRANTED IN PART as to the state law claims of malicious prosecution against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(m) DENIED IN PART as to the state law claims of malicious prosecution against Monty Forbess in his individual capacity;

(n) DENIED IN PART as to the state law claims of malicious prosecution against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(o) GRANTED IN PART as to the state law claims of false arrest/imprisonment against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(p) DENIED IN PART as to the state law claims of false arrest/imprisonment against Monty Forbess in his individual capacity;

(q) DENIED IN PART as to the state law claims of false arrest/imprisonment against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(r) GRANTED IN PART as to the state law claims of intentional infliction of emotional distress against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(s) DENIED IN PART as to the state law claim of intentional infliction of emotional distress against Monty Forbess in his individual capacity;

(t) DENIED IN PART as to the state law claims of intentional infliction of emotional distress against Kenneth Larry Averitt and Robert Buckley in their official capacities;

(u) GRANTED IN PART as to the Fourteenth Amendment fair trial claims against Kenneth Larry Averitt and Donald Holdman in their individual capacities, and those claims will be DISMISSED WITH PREJUDICE;

(v) DENIED IN PART as to the Fourteenth Amendment fair trial claims against Monty Forbess in his individual capacity;

(w) DENIED IN PART as to the Fourteenth Amendment fair trial claims against Kenneth Larry Averitt and Robert Buckley in their official capacities; and

(x) DENIED IN PART as to any remaining Section 1983 claims concerning Brady violations against Monty Forbess in his individual capacity.

SIGNED on this 7 day of January, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE